F. R. GAMMON *et al.* v. CHARLES H. BLAISDELL.

1. WRITTEN CONTRACT *to Sell Land — Action for Breach — Pleading.*
   Where a person is the equitable owner of real estate, and as such
   owner enters into a written contract with another person to sell to
   him the same, the purchaser cannot subsequently allege, as a breach
   of the contract, that the real estate, after the execution of the con-
   tract, has been condemned and taken by a railroad company under
   the right of eminent domain. (*Kuhn v. Freeman*, 15 Kas. 423.)

2. ———— *Burden of Proof.* When the purchaser of real estate brings
   an action against his vendor for an alleged breach of contract, on
   the ground that the vendor has neither the legal nor the equitable
   title to the same, the burden of proof is upon him to establish the
   allegations of his petition by competent evidence.

3. EQUITABLE TITLE — *Evidence.* The evidence in this case examined,
   and *held* not to show that, at the date of the purchase by B. from G.
   & F., the latter did not have the equitable title to the real estate
   sold by them.

*Error from Shawnee District Court.*

ACTION to recover damages for breach of contract to con-
vey land.    Judgment for the plaintiff *Blaisdell*, at the April
term, 1888.    The defendants, *Gammon* and another, come to
this court.    The opinion contains a sufficient statement of the
case.

*B. M. Curtis*, and *J. D. McFarland*, for plaintiffs in error.

*Hazen & Isenhart*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought in the court
below by Charles H. Blaisdell against F. R. Gammon and
M. E. Fowler, partners as Gammon & Fowler, for damages
for an alleged breach of contract for the sale of real estate.
On the 22d day of May, 1886, Gammon & Fowler received
from Blaisdell $150, as part of the purchase-money for lots

1, 2, and 3, in block 55, in North Cullison, Pratt county, and gave a receipt, a copy of which is as follows:

"TOPEKA, KANSAS, May 22, 1886.

"Received this day from Charles H. Blaisdell one hundred and fifty dollars as part payment on lots 1, 2, and 3, in block 55, Cullison, Pratt county, Kansas, whole purchase-price to be $300; the $150 balance due in one year from date.

GAMMON & FOWLER."

In his petition, Blaisdell alleged that at the time he paid the $150 and obtained his receipt, Gammon & Fowler had no legal or equitable title to the lots; therefore, that he was entitled to recover his damages. After his purchase, Blaisdell received $45 from Gammon, and upon the trial obtained judgment against Gammon & Fowler for $124.54, being the balance of the money that he had paid, with interest thereon. Gammon & Fowler excepted to the judgment of the court, and bring the case here.

It appears from the record that on the 2d day of March, 1887, after Gammon & Fowler had executed the receipt to Blaisdell, the Chicago, Kansas & Nebraska Railroad Company condemned and took possession of all of the lots which Gammon & Fowler had agreed to sell. Lot 1 was appraised at the sum of $20, lots 2 and 3 at $15 each, making $50. This amount was deposited by the railroad company with the treasurer of Pratt county. It was subsequently paid to F. R. Gammon, and $45 of it sent, on August 30, 1887, by Gammon, in a letter to Blaisdell. He received the money, but refused to accept it in condemnation of the lots. In the absence of instructions from Gammon, he gave him credit for $45 on the value of the lots, but stated he would look to him for the balance of the money paid by him.

We do not think that the condemnation proceedings gave any authority to Blaisdell to commence or maintain his action for a breach of the contract for the sale of the lots. It was said in *Kuhn v. Freeman*, 15 Kas. 423, that—

"None of the usual or ordinary covenants in a deed can be broken by a portion of the land covered by the covenant

being taken under the right of eminent domain.
The exercise of the right of eminent domain is
the exercise of a sovereign power; and no person
is presumed to covenant against the acts of sovereignty. Hence, where the deed has already been executed, and afterward the vendor sues the vendee for the purchase-money, it is universally held that the vendee cannot set up as a defense to the action, that a portion of the land has, since the execution of the deed, been taken under the right of eminent domain, and therefore that some of the covenants in the deed have been broken. Nor can the vendee sue the vendor in such a case in a separate action, on the supposed broken covenant. He must pay the vendor the full amount of the purchase-money and receive the condemnation money paid as damages for his compensation. This is the only remedy he has. The case at bar, however, is, to some extent, different from the above. The deed in this case was not executed at the time when the sale was made; and before the deed was executed the easement of the right-of-way had attached to the land, so that the vendor cannot now make as absolute and perfect conveyance as he agreed to do. But still this difference in the facts, we do not think, should make a difference in the decision of the question involved. It cannot be presumed when the vendor agreed to make a good and perfect conveyance, that the parties contemplated that he was agreeing to do a thing notwithstanding what might be the future acts of the sovereign authority. When Weisbach agreed that he would make a good title, he had absolute and complete title to the land. By the agreement and sale, the land became, in equity, the property of Hamaker. The legal title was allowed to remain in Weisbach merely as a security for the payment of the notes, and may be considered merely in the light of an equitable mortgage."

*(Margin note: 1. Written contract to sell land—action for breach—pleading.)*

It is urged, however, by the counsel for the plaintiff below, that neither Gammon nor Fowler had any legal or equitable title to the lots sold by them, and, therefore, that the case of *Kuhn v. Freeman* is not applicable. In support of this assertion, they say that Gammon testified upon the trial that the only thing that he had at the time of the contract with Blaisdell, and that the only thing that he had at the time the second payment from Blaisdell became due, was a

contract with the Occidental Town Company, in which he had agreed to purchase the lots from them; therefore, as he only had an agreement to purchase, he had no legal or equitable title, because such an agreement does not amount to a sale.

Under the petition, the burden of proof was upon the plaintiff below to show that neither Gammon nor Fowler had any legal or equitable title to the lots at the time of the contract with Blaisdell. Gammon testified upon the trial, among other things, as follows:

2. Burden of proof.

"Q. Prior to the sale of these lots to Blaisdell, who did they belong to? A. They belonged to Gammon & Fowler.

"Q. Who did they buy them of? A. The Occidental Town Company.

"Q. Did you have a contract? A. Yes, sir.

"Q. In whose name was the contract; in yours, or in the name of Gammon & Fowler? A. I think in my name; I think these lots were in my name.

"Q. Did the Occidental Town Company subsequently convey the lots to you under the contract? A. They did.

"Q. Have you ever refused to make a deed for these lots to Mr. Blaisdell? A. No, sir.

"Q. You may state if you now are ready to make a deed conveying these lots to Mr. Blaisdell, subject to the rights of the Chicago, Kansas & Nebraska Railroad Company, acquired by the condemnation proceedings? A. I am."

Upon cross-examination, he further testified:

"Q. When did you make the contract with the Occidental Town Company for these lots? A. I think in April or May following.

"Q. In April or May following? A. Yes, sir, in 1886.

"Q. How many lots did you buy at the time you bought them; all of them? A. Oh, no, sir; only a very small portion of them, I think.

"Q. What kind of an instrument of writing did they give you? A. A regular printed contract, like the Arkansas Valley Town Company which operates on the Santa Fé.

"Q. You did not have title to this property at the time of your contract with Blaisdell? A. I had a contract.

"Q. You did not have any deed to this property? A. No, sir; I had a contract with the town company.

"Q. When did you get the deed from the town company? A. Within the last six months, I should say; it may be longer.

"Q. Did you have a deed for this property at the time Blaisdell was down to make this second payment? A. No, sir.

"Q. Then you did not have a deed at the time the second payment became due? A. No, sir.

"Q. You only had a contract? A. That is all.

"Q. Where is that contract; have you got one with you? A. No, sir; it is in Cullison, at home.

"Q. You have not got any contract with you? A. No, sir; I have not."

All of this evidence tends to show that Gammon & Fowler had, at the time of the contract with Blaisdell, the equitable title to the lots mentioned in the receipt under a written contract from the Occidental Town Company. Sub-

3. Equitable title—evidence.

sequently, upon his cross-examination, Gammon used language to the effect that his contract from the town company was only an agreement to sell. This language, however, was more in the nature of an opinion or construction of a written contract, than anything else. The written contract between the Occidental Town Company and Gammon & Fowler will show whether it was a contract to sell, or a sale of the lots by the town company. This, of course, should have been produced upon the trial, but as the plaintiff below alleged that Gammon & Fowler had no legal or equitable title to the lots sold by them, he should have established this by competent testimony. Plaintiff below could have obtained this contract, if he had made proper efforts so to do. If the contract could not have been obtained, then secondary evidence of its contents would have been admissible.

At the time that defendants below interposed their demurrer to the evidence, it was not sufficient, under the issues of the pleadings, for the plaintiff below to recover. The subsequent evidence of Gammon, which was wholly incompetent,

if proper objections had been taken thereto, did not supply the defects.

Upon the trial, plaintiff below offered in evidence a copy of a letter written by him to F. R. Gammon on September 1, 1887, without laying any proper foundation therefor. It is doubtful, however, if the objection made to the copy was sufficiently definite to establish error. (*Smith v. Leighton,* 38 Kas. 544.)

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.