No. 19,203.

CAMEL WILLIAMS, *Appellee* and *Appellant*, v. HERMAN WESSELS et al. (O. P. SHEARER, *Appellant;* O. P. SHEARER et al., *Appellees*).

### SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE—*Real-estate Contract—Notice to Subsequent Purchaser.* In an action for the specific performance of a contract to sell real estate, the evidence is examined and held sufficient to support a finding that a subsequent purchaser was chargeable with notice of the plaintiff's rights.

2. DESCENTS AND DISTRIBUTIONS—*Residence of Intestate.* The provisions of the act regarding descents and distributions relate to lands in Kansas owned by any intestate at the time of his death, irrespective of his residence.

3. SPECIFIC PERFORMANCE—*Contract Not Signed by Wife—Subsequent Sale and Deed by Both Husband and Wife—Rights of Purchasers.* Where the owner of land in Kansas executes a valid contract for its sale, in which his wife, who was at one time a resident of the state, does not join, a later deed executed by the husband and wife transfers her interest in the land free of any claim of the original purchaser, notwithstanding the grantee has notice of the prior contract.

4. SPECIFIC PERFORMANCE—*Refusal of Wife to Convey—Purchaser Entitled to Abatement in Agreed Purchase Price.* Where the owner of land in Kansas, whose wife has at one time been a resident of the state, contracts for its sale, agreeing to convey a full title, and his wife refuses to join in the deed, the purchaser may enforce specific performance against the husband, or any one who claims under him with notice of the contract, so far as that is possible, receiving an abatement in the agreed purchase price to the extent to which the value of the title he obtains is diminished by the outstanding interest of the wife.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed January 9, 1915. Modified.

*Clyde M. Hudson,* and *Charles B. Hudson,* both of Wichita, for O. P. Shearer.

*George J. Benson,* and *T. A. Kramer,* both of El Dorado, for Camel Williams.

The opinion of the court was delivered by

MASON, J.: Herman Wessels, a married man resid-
ing in Idaho, owned a tract of land in this state. On
November 3, 1911, he entered into a written contract
for its sale to Camel Williams for $5500. On Novem-
ber 7 he undertook to sell it for $6650 to O. P. Shearer,
to whom he and his wife executed a deed, dated No-
vember 3, but acknowledged November 10 and 17, and
recorded on the last-named date. Williams brought an
action against Wessels for the specific performance of
his contract, making Wessels' wife and Shearer parties,
and alleging, among other things, that Shearer had
taken the deed with notice of Williams' rights. A de-
cree was rendered granting specific performance, but
requiring the plaintiff to take the title subject to the
interest originally held in the land by Mrs. Wessels, in
virtue of her being the wife of the owner, and having
at one time been a resident of Kansas, which interest
she had transferred to Shearer. Shearer appeals and
asks a reversal on the ground that he bought the land
without notice of the plaintiff's claim, and that the de-
cree rendered is inequitable. Williams also appeals and
asks that the decree be modified so as to award him a
full title, or if that be not done, that he be allowed an
abatement of the purchase price proportioned to the
diminished value of his title due to the unextinguished
interest of Mrs. Wessels.

Shearer maintains that the contract is too indefinite
to be enforced, on the ground that it did not mention
a mortgage on the land which Wessels orally agreed
to pay off, and that it did not specify where the pur-
chase money was to be paid and the deed delivered.
It was not necessary that the written contract should
mention the mortgage. Wessels contracted to give a
good title, and this required him to take care of any lien
not otherwise provided for. The contract was left at a
bank. It contained a provision that Williams was to
deposit $1000 with it, to be paid to Wessels when the

deal was closed, and that $2000 more (substantially the balance over a mortgage that was to be assumed) was to be paid at the same time. The fair inference is that the money was to be paid and the deed delivered at the bank. Shearer also contends that the petition was defective in not asking specific performance against him. A point is made also that the evidence did not correspond with the allegations of the petition. It is apparent that when the pleading was framed the plaintiff was not fully advised of the facts. We think it sufficiently apprised the defendants of the nature of the plaintiff's claim.

Shearer contends that he bought the land without notice of Williams' claim, and that there is no evidence to the contrary. The evidence on the subject is not very explicit, but we think it sufficient to justify the inference that he had such information as put him on inquiry, and would, if followed up with due diligence, have brought to him knowledge of the actual situation. A witness gave substantially this testimony: I. J. Hysom, a real-estate agent, asked him to buy the land, but he refused, stating that he did so for two reasons, first because Williams was a friend of his, and second because he did not believe he could get a good title, knowing that the land had been sold on a contract; on the 4th or 5th of November, or a few days later, Shearer came to the office of this witness and told him he thought he was mistaken in what he had said to Hysom, that he would not get a good title knowing the land had been sold under contract; the witness persisted in his opinion, saying that he would buy the land if he were not afraid to—that he would not buy knowing of the previous sale. Shearer contended that if he (Shearer) got the deed he would get the title. Shearer gave a somewhat different version of this conversation, and insisted that it took place after he had secured his deed. The deed which Shearer received showed that the name of Williams had been written as grantee, and

then erased. There was other evidence bearing on the matter, but this sufficed to impute to him knowledge that prior negotiations for a sale had progressed so far that a binding contract was believed to have resulted, and that a deed had been prepared, bearing the date November 3, naming Williams as grantee. It was sufficient, in view of all the circumstances, to warrant a finding that he was chargeable with notice of the claim of Williams. (*Faris v. Finnup*, 84 Kan. 122, 113 Pac. 407.) Complaint is made of the introduction of certain evidence, but any of it that was incompetent must be presumed to have been disregarded. (*McCready v. Crane*, 74 Kan. 710, 88 Pac. 748.) A question is raised as to the sufficiency of the plaintiff's tender of performance, but in view of the defenses made this is hypercritical. In behalf of Shearer it is argued that the decree of specific performance against him is harsh and unjust. If he bought with notice of the Williams contract, as the court found, he voluntarily took the risk and suffers no legal or equitable wrong from the enforcement of a valid contract.

In behalf of Williams the contention is made that he should have been given a complete title to the land. A first reason assigned is that Mrs. Wessels has no interest in it because her husband is not a resident of Kansas, and it is necessary that he should die while a resident of this state in order for her to invoke the statute allowing to a widow one-half of the lands in this state at any time owned by her husband, to which she has made no conveyance. (Gen. Stat. 1909, § 2942.) The section relied on to support this view reads:

"After allowing to the widow and children of any deceased intestate *of this state* the homestead provided in the next section of this act, and the personal property and other allowances provided by law respecting executors and administrators and the settlement of the estates of deceased persons, the remainder of the real estate and personal effects of *the intestate,* not necessary for the payment of debts, shall be distributed as hereinafter provided." (Gen. Stat. 1909, § 2935.)

The argument is that the italicized words *"the intestate"* refer to the intestate already described, that is, to "any deceased intestate *of this state,"* so that all the subsequent provisions regarding the distribution of the property of intestates refer only to those who die while residents of Kansas. The words "of this state" are employed with obvious reference to the homestead provision, and while as a mere matter of grammatical construction they might be regarded as qualifying the term "the intestate" in the latter part of the section, we can not believe that to have been the intention of the legislature.

Williams maintains that he should have been given an absolute title to the property, on the ground that Mrs. Wessels, being a party, asserted no claim to it, and her interest can not be regarded as having passed to Shearer, because the transaction was tainted with fraud. Taking the facts to be as found by the court, "fraudulent" may be too strong a term to apply to the conduct of the defendants. After Wessels had executed the Williams contract, his deed to any one else who had notice of it could not affect the right of Williams to have it enforced, irrespective of the motives of the parties. But Wessels, the only person with whom Williams had a contract, could not convey his wife's interest. Since he had promised to give Williams a clear title, good faith and fair dealing would seem to require that he should try to induce her to join in carrying out the agreement. But even if her refusal to sign the deed was at his instigation it was a lawful act on her part, since she had an absolute right to refuse for any reason she thought sufficient, or for no reason at all other than her own pleasure. Williams had a right to compel a deed from Wessels, but not from Wessels' wife—the law gave him a remedy by which he could acquire all the interest held by Wessels, but that of Mrs. Wessels was beyond his reach. In this situation Shearer received a deed from Wessels and his wife. Because of the knowledge he had of the

prior contract he took the interest of Wessels charged with Williams' equitable right to it, but he took the interest of Mrs. Wessels, as she held it, free from any such claim, unless he was incapacitated from doing so by the unconscionable character of the transaction. The extent of his offending was this—he undertook to buy the land knowing it had been contracted to Williams, professing ignorance of the prior contract in order to make his purchase effective. This ought not to disable him from retaining any benefits of his bargain to which Williams had no legal or equitable claim. We therefore think the trial court rightly decided that Williams could not require the conveyance of the interest in the property held originally by Mrs. Wessels, and by her transferred to Shearer.

But while we decide that Williams could not exact more from Shearer than he could have required from Wessels, his remedy should be as effective against one as against the other. And Wessels was personally liable upon his contract, notwithstanding his inability to perform it in full. (*Robertson v. Talley*, 84 Kan. 817, 115 Pac. 640.) The question remains whether, having received a less title than he had bargained for, Williams should not have a corresponding abatement in the purchase price. On this matter there is some conflict, but the weight of authority, and as we think the better reason, supports the view that there should be an abatement in the price, or that the purchaser should be indemnified against loss, which amounts to practically the same thing. The purchaser does not receive what he bargained for, and by the usual rule in such cases should not be required to pay the full amount agreed upon. There is some practical difficulty in measuring the value of the interest in the land which he does not acquire, but not more than in many other instances where damages are assessed which are not capable of exact computation. The right of a wife with respect to land owned by her husband in this state is regarded as an existing interest, capable of conveyance (*Mun-*

*ger v. Baldridge,* 41 Kan. 236, 243, 21 Pac. 159), and so far as affects the matter now under consideration is not substantially different from the common-law dower, the law concerning which in this connection is thus stated:

"The usual rule as to specific performance with abatement from the price is applied, in many of the states, to the case of a purchase from a married man, whose estate is subject to his wife's inchoate dower right. The purchaser may have specific performance, with a deduction from the price of such sum as represents the present value of the wife's contingent interest, estimated by the usual rules and tables. By the practice in a number of states, instead of making an abatement of a lump sum from the purchase-price, estimated as the present value of the wife's inchoate dower interest, the court gives an indemnity to the vendee against such interest. . . . By the rule in New Jersey the vendee will be indemnified against the wife's contingent dower if the wife's refusal to join was by collusion with, or the fraudulent procurement of, the husband; otherwise the vendor is not entitled either to an indemnity or compensation during the lifetime of the husband." (36 Cyc. 744.)

(See, also, Note, 24 L. R. A. 764; Note, Ann. Cas. 1914 A, 207; 26 A. & E. Encycl. of L. 83.) Two very recent cases, one on each side of the question, are cited in 13 Michigan Law Review, 346, 347—*Hirschman v. Forehand,* (Ark.) 170 S. W. 98; *Long v. Chandler,* (Del.) 92 Atl. 256.

The judgment is affirmed, with this modification: Unless Shearer shall elect to transfer the full title in consideration of the full purchase price named in the contract, the proportion by which the value of the land is diminished by reason of the outstanding interest shall be ascertained and deducted from the amount, upon payment of which the plaintiff is to receive the title subject to this interest.