No. 31,697

Chess E. Todd and Emma J. Todd, *Appellants*, v. The Stewart Sand and Material Company, *Appellee*.

(34 P. 2d 105.)

Opinion filed July 7, 1934.

C. W. Trickett, of Kansas City, for the appellants.

Edwin S. McAnany, Maurice L. Alden and Thomas M. Van Cleave, all of Kansas City; and M. W. Borders, M. W. Borders, Jr., and D. G. Warrick, all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

BURCH, J. The action was one to recover unpaid rent for a tract of land, and taxes paid by the lessor which the lessee should have paid. The defense was the tenancy had been terminated by exercise by the lessee of privilege granted in the lease to purchase the land, tender of performance by the lessee-purchaser, and refusal of the lessor-vendor to perform. The district court returned findings of fact and conclusions of law, pursuant to which judgment was rendered in favor of plaintiffs for some undisputed items, and they appeal.

The plaintiff, Chess E. Todd, owned the land in controversy, and in January, 1924, his wife joining, leased to the Kaw River Sand and Material Company, for a period of twenty years. In January, 1925, the Kaw River Company assigned to the Stewart Sand Company, which later changed its name to the Stewart Sand and Material Company. This company is the defendant, and will be referred to as the company, or the sand company.

The rent to be paid was specified in the lease, and the lessee was to pay taxes. The lease conferred on the lessee, and assigns, option to purchase at any time during the term. Method was prescribed for computing purchase price whenever the option was exercised. In connection with the grant of option to purchase, the lease provided as follows:

"And upon said purchase and said payments being made as aforesaid, said parties of the first part hereby covenant and agree to convey said property and execute good and sufficient warranty deed for the same, free and clear of all encumbrance, and to furnish full and complete abstract of title to said real estate, showing good and marketable title thereto, . . ."

The company placed a farmer, named Mamie, in possession, under a lease for a year. Mamie held over, and paid rent to the company for the first half of the second year. Then the company refused to accept rent from Mamie, and he paid rent to Todd.

On June 17, 1930, the lease was in force, and the company was privileged to exercise its option to purchase. On that day the company exercised its option to purchase, and tendered performance of

the contract of sale created by exercise of the option. By way of performance of the contract of sale the company delivered to Todd a certified check for $62,750.90, the full and correct amount of the purchase price on that day, arrears of rent and taxes, and interest. The communication on the company's part was by writing, addressed to Todd, expressing exercise of option to purchase, giving the items making up the amount of the check, and beginning and ending as follows:

"Herewith I am handing to you in person certified check of the Stewart Sand Company on the Commerce Trust Company of Kansas City, Missouri, for the sum of $62,750.90. This certified check is tendered to you in payment of the following items under the lease dated March 21, 1924:

. . . . . . . . . . . . . . . . .

"Please deliver to the Stewart Sand Company a good and sufficient warranty deed to said real estate, free and clear of all encumbrances, and furnish a full and complete abstract of title to said real estate, showing good and marketable title to said real estate, as provided for in said lease."

Todd made no objection to the medium of tender, and kept the check until June 21. The legal effect of this transaction may as well be disposed of here.

Delivery of the check to Todd was spoken of as a tender, and Todd contends the tender was conditional, because of the request for deed and abstract. The request was not in form or in substance a condition. Besides that, a tender is good even if accompanied by a demand for reciprocal performance, or by a condition on which the person making the tender has a right to insist. (*O'Donnell v. Chamberlain*, 36 Col. 395; *Macy v. Brown*, 326 Ill. 556; *Comstock Mfg. Co. v. Schiffmann et al.*, 113 Ore. 677; *Schaeffer v. Herman, Appellant*, 237 Pa. 86.)

The result of the transaction of June 17 was that the company had done all it could do to purchase the land, the relation between the parties of landlord and tenant ended, and the relation became that of vendor and purchaser.

On June 20 the company wrote Todd a letter demanding a deed. On June 21 Todd returned the check.

By refusing the company's tender of performance and failing to perform on his side, Todd breached his obligation to convey, and the company could have compelled specific performance. (*Bell v. Wright*, 31 Kan. 236, 1 Pac. 595; *Chadsey v. Condley*, 62 Kan. 853, 62 Pac. 663.) . To invoke the equitable remedy of specific per-

formance it would have been necessary for the company to keep the tender good by paying the money into court, or offering to do so. An offer to do so in the petition would have been sufficient to enable the company to maintain the action. The company might have waived specific performance, and might have sued Todd for damages. The company was not obliged, however, to move precipitately against Todd, and in any event Todd could not, by nonperformance of the contract to convey, take advantage of his own wrong and restore the relation of landlord and tenant. (2 Underhill, Landlord and Tenant, 994; 35 C. J. 1041.)

Todd testified at the trial his reason for returning the check was pendency of litigation growing out of a proceeding instituted by the Atchison, Topeka & Santa Fe Railway Company to condemn the land. The litigation was Todd's own unfounded litigation, which he could have discontinued at any time, and which arose in the manner now to be described.

In February, 1927, the railway company instituted condemnation proceedings. On April 19 the commissioners filed their report, awarding damages in the sum of $50,414. On April 30 Todd appealed. On June 15 the railway company paid the condemnation money to the county treasurer, and on the same day the sand company filed a petition claiming a portion of the condemnation money.

On April 5, 1928, the trial of Todd's appeal resulted in a verdict in his favor for $145,000. On May 21 the railway company's motion to vacate the jury award, and for a new trial, was denied. The railway company had not taken and did not take possession of the land, and on May 2, as it was privileged to do, the railway company served notice of abandonment of the condemnation proceeding. On May 14 Todd filed an "answer and cross petition" to the railway company's notice of abandonment of the condemnation proceeding. By the pleading Todd questioned the right of the railway company to abandon condemnation, and sought to enforce payment of the jury award. On May 17 the railway company demurred to Todd's answer and cross petition.

On July 11, 1929, Todd's answer and cross petition and the railway company's demurrer were withdrawn, and on July 29 Todd instituted an independent action against the railway company to recover the jury award of $145,000, and to recover expenses incurred in prosecuting the appeal from the award of the condemnation commissioners. The contention was the railway company could not,

after verdict of the jury, abandon the condemnation proceeding. The railway company demurred to the petition.

On September 29 this court, in an original proceeding instituted by the railway company, issued a writ of mandamus directing the county treasurer to refund to the railway company its deposit with the county treasurer of $50,414 to pay the condemnation commissioners' award.

On December 8, 1930, the railway company's demurrer to Todd's petition was sustained. Todd appealed to this court, and on January 30, 1932, the judgment of the district court was affirmed. The syllabus reads:

"1. The condemnation of land for railway uses is a statutory proceeding, not an ordinary action at law or a suit in equity, and is governed by the statute prescribing the methods of exercising the right of eminent domain.

"2. Under the statute the proceeding is to fix the price which the railway company shall pay for the land sought to be condemned, and the railway company may abandon its purpose to take the property at the price fixed without incurring any liability to pay the damages awarded, even after a trial has been had upon the appeal by the landowner to the district court, and a motion for a new trial has been made and overruled, if the railway company has not yet taken possession of the land.

"3. Nor in case of abandonment is there any liability of the condemning party to the landowner for the expense incurred by him incident to the trial of the appeal to obtain a higher price for the land." (*Todd v. Atchison, T. & S. F. Rly. Co.*, 134 Kan. 459, 7 P. 2d 79.)

In the opinion it was pointed out that the law stated in paragraphs 1 and 2 of the syllabus had been settled by the decisions in *Railway Co. v. Wilson*, 66 Kan. 233, 69 Pac. 342 (1903) and earlier decisions.

Reverting to June 21, 1930, when Todd returned the check for the purchase price of the land, the company, without recognition of continued existence of the landlord and tenant relation, and looking solely to purchase of the land, wrote Todd, on June 23, as follows:

"We have made you a valid tender under the terms of the lease referred to in our letter of June 17, and consider that we have done everything to be entitled to receive from you a deed to the land in question. Our tender still remains good, and we shall continue to keep it good. We are able, ready and willing to pay you said sum of $62,750.90 upon request by you and the delivery of deed and abstract as specified in said lease."

The option to purchase had been exercised, and a contract on Todd's part to convey had resulted. The company had tendered performance, the tender had been declined, and Todd's contract to convey was broken. Under these circumstances this letter was, in

legal effect, a continuing offer by the company to purchase the land for $62,750.90, to be paid to Todd on his request, and on delivery by him of deed and abstract as specified in the lease. An open offer of this kind would last for a reasonable time. If accepted, the offer should be accepted according to its terms, and in this instance it was necessary that the request for payment of the money be accompanied by proffer of deed and abstract. This was never done.

On December 29, 1930, Todd wrote the company as follows:

"Delay on my part in acting on your tender for the property at Morris, Kansas, as you are aware, has been due to the action pending in the district court of Wyandotte county, Kansas, for a judicial determination as to whether or not the A. T. & S. F. Rly. Co..has the right to abandon its condemnation proceeding after a jury award and confirmation of same.

"The court just recently sustained the Santa Fe's demurrer in this action, which puts a new light on the matter, in that, for the first time since the condemnation proceeding was instituted, any conveyance by me will not now be subject to the condemnation proceeding.

"In your last letter to me you stated your tender was still good, and that you intended to continue to keep it good. If this is true, you will please give evidence of that fact by the return to me of a certified' check in my favor in the sum of $62,750.90. On the other hand, I wish you would please advise me promptly in case you no longer consider your tender in force, in order that we may proceed to perfect our appeal in the case."

On December 30 the company replied as follows:

"I have your letter of December 29, 1930. In this letter you ask me if it is our intention to keep good the offer to buy your Morris property, which we made on June 23 and prior thereto.

"In view of the length of time which has elapsed since this offer was made, and for other reasons, it is not our intention to continue it, and we hereby withdraw the offer to purchase your Morris property."

On January 6, 1931, Todd wrote the company as follows:

"Now that your tender, covering your option to purchase about eighty acres of land located near Morris, Kansas, has been withdrawn by your letter of December 30, 1930, I feel that it is only right and proper that you should pay up the back rent and taxes, together with interest thereon, and I therefore request that you please send me check in payment of same to January 15, 1931."

On February 27 Todd perfected his appeal to this court, with the result stated above. There were subsequent negotiations between the parties, which came to nothing. On July 15, 1932, Todd sued the company for rent from July 15, 1927, to June 15, 1932, and for taxes paid by Todd for the years 1927-1931. The court awarded judgment for unpaid rent and taxes to June 17, 1930.

In his letter of December 29, 1930, Todd explained his delay in acting on the company's "tender." This was not the tender of June 17, 1930, which was the only tender the company made. Todd acted on that tender on June 21, 1930, by rejecting it. The company's letter of June 23, acknowledging receipt of the returned check, was not a tender of anything, but, as indicated, was an offer.

The second paragraph of Todd's letter of December 29, 1930, was not in accord with the facts. Any conveyance made by Todd subsequent to the time the railway company served notice of abandonment of the condemnation proceeding, would have been free of the condemnation proceeding. Whatever cloud the subsequent litigation cast on the title was of Todd's own creation.

Todd did not, by his letter of December 29, 1930, accept the company's offer of June 23, and did not tender a deed and abstract in compliance with the offer. He merely referred to the offer, inquired if it was still good, and requested prompt answer, so that if the company no longer regarded the offer as in force, he could still pursue the jury award will-o'-the-wisp.

Before there was any acceptance of the company's offer, the offer was withdrawn. As indicated above, the tenancy had long since become *fait accompli*, and withdrawal of the offer did not restore the relation of landlord and tenant.

Todd makes various contentions: He did not breach the contract to convey created by exercise of the option to purchase; he was unable to convey when the option to purchase was exercised and payment of price was tendered; the tender was not made in good faith; he was unable to convey because of litigation other than that arising from the condemnation. The contentions are without merit. With respect to the last one, it may be noted it was not referred to in Todd's letter of December 29, 1930.

The district court returned the following findings of fact:

"35. That the total amount of the rental received by the plaintiffs herein from Mamie, the subtenant of the defendant herein, was $2,400.

"36. That the total amount of taxes paid by the plaintiff herein was $1,538.43.

"37. That the total amount of rental due from the defendant to the plaintiffs under the lease in question from July 15, 1927, to June 17, 1930, was $6,312.

"38. That the plaintiff is not entitled to interest upon the amount of money due from the defendant to plaintiffs as rental, nor upon the amount of money paid by the plaintiff as taxes because of the offers heretofore made on the part of the defendant to pay the amounts, together with interest."

Judgment was rendered for plaintiff for $5,450.43.

Todd says finding 38 is a conclusion of law. Whatever it is, it says Todd was not entitled to interest, and interest was not allowed. The statute reads:

"Creditors shall be allowed to receive interest at the rate of six per cent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent or money due on settlement of account, from the day of liquidating the same and ascertaining the balance; for money received for the use of another, and retained without the owner's knowledge of the receipt; for money due and withheld by an unreasonable and vexatious delay of payment or settlement of accounts; for all other money due and to become due for the forbearance of payment whereof an express promise to pay interest has been made; . . ." (R. S. 41-101.)

It will be observed the statute is framed to protect privilege of the creditor to receive, and not to impose obligation on the debtor to pay, and in any case in which interest is allowed it must be as compensation for use or forbearance of money, or as damages for detention. Neither theory of interest can be satisfied by the facts of this case.

Rent was payable at the rate of $180 a month, payable in advance. Todd says that money was due on the 15th of each month, and says that when he paid taxes to be paid by the lessee the amount was money due. That would have been true while the tenancy lasted, but Todd would not have it so.

The company was not in arrears when the condemnation proceeding was begun in February, 1927. After that, rent would not have become in default until July 15, 1927, and on July 1 the company sent its check to Todd to pay rent from July 15 to August 15. Todd returned the check, saying that since the railway company had condemned the land he did not feel at liberty to accept rent.

The condemnation proceeding was abandoned on May 2, 1928, and on May 3 the company sent Todd a check for $1,800, in payment of rent from July 15, 1927, to May 15, 1928. Todd returned the check.

On June 1, 1928, the company wrote Todd a letter stating it had just learned that on April 5 he had paid taxes for 1927. The company inclosed its check for the amount, with 15 per cent interest, the statutory rate. Todd returned the check.

As indicated, on June 17, 1930, the company gave Todd a check for the purchase price of the land, and for the following items specified in the letter of remittance:

"Rent from July 15, 1927, to July 15, 1930, at the rental of $180 per month,

with interest at six per cent per annum on each month's rent, from its due date, $7,079.46.

"All taxes and penalties paid by you upon said real estate since the year 1927, with interest thereon at fifteen per cent per annum to this date, $1,671.44."

Todd returned the check.

On June 17, 1930, obligation of the company as tenant to pay future rent and taxes ceased. The company had put money in Todd's hands to discharge all its obligations under the lease. He would not have it, because he was contending the railway company had condemned the land. What he wanted was the jury award, and he could not say, for the purpose of experimental litigation, rent and taxes were not due, and when the experiment failed, say the contrary, in order to get interest.

When Todd concluded the company owed him for rent and taxes, he included in his demand rent accruing after the tenancy had terminated. The plain inference is, another tender would have been as useless as the several previous tenders had been, and the company may not be mulcted in interest for not going through the idle ceremony of making a tender and then paying the money into court. Under the circumstances tender to stop interest was excused.

The foregoing disposes of the merits of the appeal, and the judgment of the district court is affirmed.