No. 38,793

ALBERT H. WETZEL, *Appellee,* v. BEN J. HATTRUP and MARY M. HATTRUP, *Appellants.*

(255 P. 2d 637)

Opinion filed April 11, 1953.

*John A. Etling,* of Kinsley, argued the cause, and *W. N. Beezley,* of Kinsley, was with him on the briefs for the appellants.

*Jerome K. Wilson,* of Kinsley, argued the cause, and *Russell L. Hazzard,* of Dodge City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action brought by the vendee to compel the specific performance of a written contract for the purchase of real estate. After a hearing the trial court made findings of fact and conclusions of law and rendered a decree for plaintiff. Defendants have appealed.

The record discloses that on April 8, 1947, the defendants entered into a written contract by which they agreed to sell to plaintiff certain described real property in Ford county for the sum of $24,000, to be paid $2,000 upon the signing of the contract, $5,000 by May 15, 1947, $7,000 by May 1, 1948, $7,000 by May 1, 1949, and $3,000 by May 1, 1950, the deferred payments to draw interest at the rate of five percent per annum. Plaintiff was to have possession of the property and pay the taxes for the year 1947 and subsequent years. The defendants agreed to have the abstract brought to date and to execute a warranty deed and place the same in

escrow in the Ford County State Bank at Spearville, with instructions to deliver the deed and abstract when the terms of the contract had been fully complied with and the contract price paid. The contract contained the following paragraph:

"It is especially agreed and understood that time is the essence of this contract and should said second party fail, neglect, or refuse to make any of the payments on the principal promptly when the same shall become due or shall fail, neglect, or refuse to make any interest payments or pay any taxes due on the property promptly when the same shall become due, said first parties at their option may declare this contract forfeited and all payments may be retained by first parties as rent and liquidated damages providing, however, that said second party shall have thirty days grace on all such payments before this clause shall become operative."

Defendants executed the deed, had the abstract brought to date and placed them in the bank, as provided. Plaintiff went into possession of the property, paid all the payments promptly as they came due except the $3,000 payment due May 1, 1950, and also paid the taxes on the real property each year as they became due.

On December 20, 1950, plaintiff brought this action and later filed an amended petition which alleged the above facts, and further alleged that about May 15, 1950, he saw defendants and had a talk with them in which he stated in substance that while he could pay the money he would like to borrow it for a short time in order to buy an extra load of steers. There was some discussion about the grace period for payment, which plaintiff stated was sixty days and defendants stated it was but thirty days. In the petition it was alleged that:

"Defendant then told plaintiff he had to go and would let plaintiff know about letting him use the balance due on the contract and defer the payment. Plaintiff then stated he would wait and for defendant to be sure and let him know. Plaintiff relying on the statement did not examine his contract as to the period of grace allowed on the payments and did not make the final payment due May 31 [1], 1950."

It was further alleged that in the latter part of June defendants had not advised plaintiff as to the matters discussed about May 15, and on June 22, 1950, he offered to pay defendants the balance of the purchase price, which they refused; that he also went to the bank and tendered the payment, which the bank refused to accept.

In their answer defendants admit the execution of the contract and the compliance with it, except that plaintiff had not paid the $3,000 due May 1, 1950, within the time provided by the contract, and admit that on June 22, 1950, plaintiff offered to pay the escrow

agent the sum of $3,000 and interest to that date, which offer was refused. The answer then pleaded an entirely different version of the oral statement of the parties in May to the effect that they told plaintiff in that conversation that the last payment under the contract was due June 1, 1950, and that no extension of time would be granted. It was further alleged that in a conversation with plaintiff about June 21, 1950, he offered to return to plaintiff all sums including interest paid by plaintiff to defendants, together with all taxes paid by plaintiff, less the reasonable rental value which had accrued from the real property, which offer was refused by plaintiff; that on July 1, 1950, defendants had their attorneys write a letter to plaintiff, a copy of which was attached to the answer, which advised plaintiff that defendants invoked the forfeiture clause of the contract, and notified him to vacate the property (describing it) immediately. Defendants also filed a cross petition in which they made the denials and allegations of their answer a part insofar as applicable, and further alleged that they offered to pay and tender into court for the benefit of plaintiff all sums paid by plaintiff to defendants under their contract and all taxes paid by plaintiff upon the land, less the reasonable value of the use thereof, during the period the real estate was occupied by plaintiff, and alleged that they were entitled to have the contract canceled and rescinded and to have immediate possession of the real property. Plaintiff filed an appropriate reply to the answer and also filed an answer to the cross petition, which consisted of a general denial. After hearing the evidence the court made the following findings of fact:

"1. That under the agreement for sale of real estate made and entered into between the parties on April 8, 1947, the plaintiff paid to defendants the sum of $2,000 on April 8, 1947, the further sum of $5,000 on May 15, 1947, the further sum of $7,000 on May 1, 1948, and the further sum of $7,000 in May 1, 1949. Upon making each such deferred payment plaintiff paid the interest on all deferred payments at the rate of 5 percent per annum. The Court further finds that said plaintiff paid when due taxes on said real estate as follows: $114.82 for the year 1947; $134.11 for the year 1948; $140.98 for the year 1949; and $110.64 for the year 1950.

"2. According to the terms of the contract the grace period on the payment due May 1, 1950, expired on June 1, 1950. Subsequent to June 1, 1950, and before June 21, 1950, defendants notified the Ford County State Bank at Spearville, Kansas, the escrow agent, not to accept plaintiff's final payment under the contract which was due on May 1, 1950.

"3. That plaintiff and defendant on or about May 20, 1950, had a conversation in which plaintiff asked defendant if he, the plaintiff, could not borrow from the defendant the amount still due on the contract in question to buy an

extra carload of steers; but stated to defendant he could pay him $1,000 or $1,500, and would give him a check for all of the $3,000 then due if the defendant wanted it. That defendant did not insist upon payment of the money at that time.

"4. That plaintiff did not make the payment due on said contract on May 1, 1950, in the amount of $3,000 with interest at 5 per cent from May 1, 1949, but did tender the full amount due on said contract on June 21, 1950, at which time defendant refused to accept said payment and stated that he wanted the land back.

"5. That on July 1, 1950, defendant caused to be written and mailed to plaintiff the letter attached to defendant's answer and cross petition herein as Exhibit 1, and that said plaintiff received said letter on or about July 6, 1952.

"6. That about the middle of July the defendant, Ben Hattrup, said to Herbert Wetzel that he did not let the plaintiff know about the loan because he wanted the plaintiff to let the time run over.

"7. That the plaintiff put in the wheat crop in the fall of 1950 and harvested it in the season of 1951.

"8. That the reasonable rental value of said real estate during the period of plaintiff's occupancy thereof is $6,195.91.

"CONCLUSIONS OF LAW

"1. That because of the period of time covered by the contract the plaintiff's offer to pay the balance with interest on June 21, 1950, was a substantial compliance with the contract.

"2. That plaintiff is entitled to specific performance of the contract upon the plaintiff paying into court the balance of $3,000 with interest at 5 per cent up to and including June 21, 1950."

In due time defendants filed a motion to set aside finding of fact No. 6 upon the grounds that it was not supported by competent evidence and not within the issues; also to add to finding of fact No. 4 the following:

"'At the time defendant told the plaintiff that he wanted the land back, defendant further told plaintiff that he would pay him back everything he had paid under the contract less the rental value of the property. Plaintiff refused this offer.'"

Defendants also moved to set aside conclusions of law Nos. 1 and 2 on the grounds of their being contrary to the evidence, unsupported by the findings, and contrary to law. Defendants also filed a motion for a new trial. In due time these motions were taken up, duly considered by the court, and overruled.

In this court counsel for appellants assign as error the judgment of the trial court decreeing specific performance and denying defendants any relief under their cross petition in which they asked for rescission and offered to repay plaintiff all he had paid under the contract. In their argument they point out that in the written

contract time is expressly made the essence, and refer to the letter of July 1, 1947, written by attorneys employed by defendants (but who did not represent defendants in the trial of this case) as strengthening the fact that the sellers had unequivocally elected to call the contract at an end. The letter was in fact a notice to the buyer that the sellers "invoked the forfeiture clause" of the contract of April 8, 1947, and notified the purchaser to vacate the real property (describing it) immediately. Had defendants proceeded upon that theory in this action and succeeded they would have kept all ($21,000 and taxes for three years) that had been paid by the buyer as liquidated damages. But counsel for appellants in their brief say:

"It should be made clear, however, that in this case the sellers do not ask for a forfeiture, only rescission upon making the purchaser whole."

By abandoning forfeiture and asking for rescission the defendants presented to the trial court a claim for equitable relief under the facts. The plaintiff was also asking for equitable relief under the facts. So the whole case was presented to the court in which each party was asking the court to hear all the facts and to grant such equitable relief as the facts warranted. The respective parties by their pleadings made it clear to the court the relief that party thought should be decreed. Many of the facts, of course, were agreed upon and were or could have been shown by record evidence. There was testimony as to conversations between the parties in May and June, 1949, which was controverted. The testimony on behalf of the plaintiff tends to show that prompt payment of the last $3,000 on the contract was waived by defendants. The testimony on behalf of defendants tends to show the contrary. It is the function of the trial court to weigh that evidence and determine the facts in relation thereto. The court did that in its findings of fact. Those findings were favorable to the plaintiff. There is ample evidence to sustain them. The trial court's conclusions of law were proper under the facts found by the court. Frankly, that is about all there is to this lawsuit.

The question whether a contract for the sale of real estate should be specifically performed or rescinded has arisen in many cases and under a great variety of circumstances. It would be difficult, if not impossible, to find a case where the facts were identical with the one before us. The general principles, however, are quite clear. In *Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743, it was held:

"Whether equity will decree the specific performance of a contract rests in judicial discretion and always depends upon the facts of the particular case. . . ." A similar statement is found in many authorities.

In 49 Am. Jur. 94, it is said:

"The various defenses to proceedings for specific performance may as a rule be waived. For example, the defendant in an action for specific performance cannot set up a lack of mutuality in the contract where, by his conduct, he has clearly waived this defense. In like manner, the right of a defendant to rescind a contract on account of the plaintiff's default or fraud may be waived."

And in 58 C. J. 1097, it is said:

"Although the time of payment is essential, it may be excused at the specified time where defendant . . . is the cause of the delay, as where he induces the purchaser to delay payment, or evades a tender by the purchaser, . . ."

Under the facts found by the trial court in this case we think it is clear that appellants waived the strict terms of the contract with respect to the time of payment of the last $3,000 and that the court was justified in rendering a decree of specific performance.

We have examined all of the authorities cited by counsel, but find no necessity of setting them out and discussing them in detail.

The judgment of the trial court is affirmed.