No. 46,190

FRANK WILCOX, *Appellant,* v. WYANDOTTE WORLD-WIDE, INC., A KANSAS CORPORATION, *Appellee.*

(493 P. 2d 251)

Opinion filed January 22, 1972.

*Wayne H. Phillips,* of the firm of Phillips and Kiely, of Kansas City, argued the cause, and *M. Patricia Kiely,* of Kansas City, was with him on the brief for the appellant.

*Clarence H. Wood,* of the firm of Rice and Baska, of Kansas City, argued

the cause, and *James L. Baska*, of Kansas City, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action for specific performance which arose out of a transaction between the appellant, Wilcox and the appellee, Wyandotte World-Wide, Inc., involving the purchase of two tracts of land. The two tracts of land for purposes of convenience have been designated as Parcel B and Parcel C and are located in Wyandotte County, Kansas. To describe the parcels briefly it can be stated that Parcel B was a hill and Parcel C was a low lying area filled with a number of draws and a creek bed. It appears from the record that Parcel C was also covered with timber. Wilcox was a grading contractor and Wyandotte World-Wide was engaged in the business of developing real estate for building construction. It is clear from the depositions of Wilcox and of Jack W. Bertoglio, president of the appellee, that the agreement between the parties contemplated an immediate sale of Parcel B and a two-year option to purchase Parcel C. From the discussion between the parties it is obvious that Wilcox intended to remove the dirt and rock from Parcel B and deposit it on Parcel C thus hoping to create two level pieces of property which might be available for building purposes. Pursuant to their discussion Wyandotte World-Wide sold Parcel B to Wilcox and a deed was given for the land. At about the same time Wyandotte World-Wide gave to Wilcox an exclusive option to purchase Parcel C for a period of two years. At the time the transaction was consummated Wilcox advised Bertoglio that Wilcox intended to commence work on Parcel B to remove the dirt and that he also intended to prepare Parcel C to make it a buildable piece of land. At the time the option was given to Wilcox, Parcel C consisted of a total of 36.27 acres. The agreed purchase price on exercise of the option was to be $70,000.00. The option contract involving Parcel C was executed on August 18, 1967. Shortly thereafter Wilcox began work removing dirt from Parcel B and moving it to Parcel C. In addition to this Wilcox began site grading and preparation on Parcel C by clearing the timber, making necessary fills to make the land level and changing the creek channel. This work was performed by Wilcox during the two years subsequent to the execution of the option. The problem in this case arose in July 1968. On July 31,

1968, condemnation proceedings were commenced by the Board of Trustees of the Kansas City, Kansas, Junior College by which the Board of Trustees condemned 6.85 acres of Parcel C. This left a remainder of 29.42 acres in Parcel C. Wilcox was named along with Wyandotte World-Wide as a defendant in the condemnation proceeding. The condemnation award was in the amount of $25,690.00 less special assessments and prorated taxes which was accepted. In November 1968, a check was issued in the amount of $23,634.97 payable to Wyandotte World-Wide, to the Fidelity State Bank, which held a mortgage on Parcel C, and also to Frank Wilcox. This check was signed by Bertoglio as president of Wyandotte World-Wide and delivered to Al Pearson, Wyandotte World-Wide's banker at the Fidelity State Bank. Frank Wilcox went to the bank and endorsed his name on the check and the check was deposited to the account of Wyandotte World-Wide. Wilcox testified that at the time he endorsed the check he was assured by Al Pearson that the amount of the check would be applied toward the purchase price under the option contract for the sale of Parcel C. In his deposition Bertoglio denied any knowledge of the conversation between Al Pearson and Wilcox, and stated he had given no specific instructions or authority to Al Pearson to bind Wyandotte World-Wide in the application of the proceeds of the check. Bertoglio did testify in his deposition that Al Pearson had authority to endorse Wyandotte World-Wide's signature on the check and that Al Pearson has authority to act for Wyandotte World-Wide in connection with the transfer of real property on specific directions from him. The deposition of Al Pearson as to the extent of his authority was not taken and it, of course, is not included in the record.

It should be noted that at the time the condemnation award was paid Wilcox had not exercised his option to purchase Parcel C. The two-year period during which the option could be exercised did not expire until August 18, 1969. Wilcox exercised his option by notifying Bertoglio, as registered agent of Wyandotte World-Wide, by a letter dated August 13, 1969, which was received by Wyandotte World-Wide on August 14, 1969. In the letter Wilcox states specifically that he exercises the option for the sum of $70,000.00 cash which he has placed in escrow with the Title Company less the amount Wyandotte World-Wide had received from the condemnation award. Stated in other words it is undis-

puted in the record that Wilcox paid to the escrow agency the sum of $43,575.04 by a cashier's check drawn on the Fidelity State Bank representing the total purchase price of $70,000.00 less the condemnation award and prorated taxes for the year 1969. Wyandotte World-Wide declined to accept the exercise of the option in the manner suggested by Wilcox. Wyandotte World-Wide submitted a counter offer to Wilcox to convey the remainder of the tract of 29.42 acres to Wilcox for a total of $55,191.43. This figure was arrived at by attempting to compute a proportionate amount of the original purchase price based upon the acreage remaining after the condemnation compared with the original amount of acreage. At the time the deposition of Bertoglio was taken it was stipulated by the parties that the amount submitted by Wyandotte World-Wide in its counter offer was in error and that it should have been more than that if it had been properly computed or calculated. The parties could not agree and were at loggerheads.

On October 3, 1969, Wilcox filed this action against Wyandotte World-Wide seeking partial specific performance of the option contract as to the land remaining with an abatement of the purchase price in the amount of the condemnation award less the prorated taxes for the year 1969. Plaintiff alleges in his petition that he had performed work to improve Parcel C during the option period in view of his contemplated ownership and that this work was performed with Wyandotte World-Wide's knowledge and consent. In his petition Wilcox alleged that the taking of the 6.85 acres in the condemnation proceedings filed by the Board of Trustees of the Junior College made it impossible for the option contract to be performed in its entirety and that Wilcox having elected to exercise his option was entitled to the condemnation award as a credit or set-off on the option contract price of $70,000.00. In the prayer of his petition Wilcox prayed for specific performance of the option contract with a credit or set-off of the condemnation award or in lieu thereof, damages for the work and labor performed by Wilcox on the total acreage or for the unjust enrichment to Wyandotte World-Wide resulting therefrom.

Wyandotte World-Wide then filed its answer admitting the execution of the real estate option contract and admitting receipt of Wilcox' letter of August 13, 1969, exercising the option. Wyandotte World-Wide admitted in its answer that it had delivered

to the escrow agent, Guaranty Title and Abstract Company, a warranty deed and further admitted that subsequent to that time Wilcox had delivered to the escrow agent a cashier check in the amount of $43,575.04. Wyandotte World-Wide admitted in its answer that it had declined to accept Wilcox' offer to pay $43,-$575.04 for the remainder of the land. Wyandotte World-Wide further alleged in its answer that if Wilcox performed any work or labor on the land he did so without notice to or authority from Wyandotte World-Wide. It is further admitted in the answer that Wilcox attempted to participate in the condemnation proceedings and claimed some interest therein. Wyandotte World-Wide further alleged that at no time prior to the award of the contract did Wilcox exercise or attempt to exercise his option to purchase Parcel C and after the taking of the land by condemnation it was thereafter impossible for Wyandotte World-Wide to convey to Wilcox the land described in the option. The counter offer made by Wyandotte World-Wide is alleged in the answer with an allegation that Wilcox did not accept it. In its answer Wyandotte World-Wide prayed that Wilcox' petition be dismissed for failure to state a claim and further prayed the court to find the option was terminated. Wyandotte World-Wide prayed for judgment for its costs. The filing of Wyandotte World-Wide's answer brought the case to issue.

With the pleadings in this posture the parties took the depositions of Frank Wilcox and of Jack W. Bertoglio, president of Wyandotte World-Wide. These depositions confirm the truth of the facts as set forth above. Bertoglio testified in his deposition that at the time Wilcox purchased Parcel B, it was agreed that the two-year option be granted on Parcel C. Bertoglio further testified that at the time Parcel B was purchased there was some discussion relating to the creek area and the need for improving the area which at that time was not useable. He testified that he was aware of Wilcox' work during the two years the option was in existence and that he observed changes being made on Parcel C. In regard to the authority of Al Pearson, he denied that he had given any authority to Al Pearson or had any knowledge of any agreement to credit the condemnation award check toward the purchase price of Parcel C. He did testify that Al Pearson had authority to endorse Wyandotte World-Wide's name on the check and that Al Pearson did have authority to commit Wyandotte

World-Wide in connection with transfer of real estate properties but only on specific directions. This left open an issue of fact as to the authority of Al Pearson to agree that the condemnation check be considered as a partial payment on the purchase price of $70,000.00.

On March 24, 1970, Wyandotte World-Wide filed a motion for summary judgment pursuant to K. S. A. 60-256 moving the court to enter summary judgment in favor of the defendant on all issues involved in the action. In this motion Wyandotte World-Wide stated that it was entitled judgment for the reason that the pleadings, exhibits, and depositions on file show that there is no real issue as to any material fact.

On April 7, 1970, Wilcox filed his Objections to Summary Judgment contending that there were issues of facts undisposed of, particularly in connection with the question of the right of Wilcox to recover for the work and labor he had performed. Wilcox further contended that there remained an issue of fact as to the authority of Al Pearson of Fidelity State Bank to bind Wyandotte World-Wide that the amount of the condemnation award would be applied as a credit toward the total purchase price under the option contract. Counsel submitted memorandum briefs. The trial court sustained the motion for summary judgment without making findings of fact or conclusions of law or stating any rationale for its decision. It entered judgment in favor of Wyandotte World-Wide against Wilcox on all issues. A timely appeal was filed to this court.

On this appeal the appellant, Frank Wilcox sets forth in his Statement of Points, six points of error as follows:

"1. It was error to rule that a condemnation of a six-acre portion of a 36-acre option to purchase, prior to the running of the option, terminates the option if not exercised instanter.

"2. It was error to deny specific performance of plaintiff's option to buy.

"3. It was error to sustain defendant's motion for summary judgment when two (2) factual questions had not been determined.

"4. It was error not to allow plaintiff the benefit of the bargain by crediting the condemnation proceeds to the option price.

"5. It was error to deny plaintiff the opportunity to prove his damages upon refusing specific performance.

"6. It was error to deny plaintiff the opportunity to examine defendant's agent as to his authority to bind his principal in the application of the condemnation funds."

At the outset it should be emphasized that the appellant, Wilcox, was given an exclusive option to purchase Parcel C for a period

of two (2) years from the date of the option. This option was exercised by Wilcox by his letter to Wyandotte World-Wide dated August 13, 1969. It is well established in Kansas that an option agreement to sell and convey land becomes absolute and binding on both parties when the option is accepted by the vendee within the time and on the terms specified. Such an agreement will be specifically enforced if it is fairly made and for a sufficient consideration. (*Chadsey v. Condley*, 62 Kan. 853, 62 Pac. 663; *Todd v. Stewart Sand & M. Co.*, 140 Kan. 71, 34 P. 2d 105; *McDermed v. Ackley*, 141 Kan. 818, 44 P. 2d 274; *Tinkler v. Devine*, 159 Kan. 308, 154 P. 2d 119; *Nigh v. Wondra*, 167 Kan. 701, 208 P. 2d 239; *Price v. Brodrick*, 183 Kan. 71, 325 P. 2d 387.)

Whether equity will decree the specific performance of a contract rests in sound judicial discretion and always depends on the facts of the particular case. (*Shepard v. Dick*, 203 Kan. 164, 453 P. 2d 134; *Wetzel v. Hattrup*, 174 Kan. 244, 255 P. 2d 637.) Ordinarily there is no equity in releasing a party from a fair and reasonable contract into which he freely entered unless the circumstances of the case require it. (*Crockett v. Gray*, 31 Kan. 346, 2 Pac. 809.)

A court of equity may and, where equity requires it, will grant partial specific performance of a contract for the sale of real estate by enforcing the contract as to only a part of the land contracted for, and apportion the contract price. This may be done notwithstanding no apportionment is provided for in the contract. In *Crockett v. Gray*, supra, the contract provided for the conveyance of 33 acres and it was established that one acre of the tract was a homestead and the contract was void, because signed by the husband alone. Specific performance of the contract for the remaining 32 acres was decreed with an abatement of the purchase price for the value of the homestead acre. The same rule is recognized in *Williams v. Wessels*, 94 Kan. 71, 145 Pac. 856. There the owner of land contracted for its sale and his wife refused to join in the deed. The contract purchaser was granted specific performance, receiving an abatement in the agreed purchase price to the extent to which the value of the title he obtained was diminished by the outstanding interest of the wife. Under similar circumstances specific performance was granted in *Herman v. Sawyer*, 112 Kan. 6, 209 Pac. 663. The rule has also been recognized in *Hollingsworth v. Sell*, 167 Kan. 405, 207 P. 2d 406, and in *Zeigler v. Conger*, 204 Kan. 143, 460 P. 2d 515.

A question of law has been raised in this case as to whether or not the taking of a small portion of a tract of land by eminent domain prevents specific performance of an executory contract for the sale of land in an action brought by either the vendor or the vendee. There are a number of cases in Kansas which hold that under those circumstances specific performance may be granted where the equities of the case require it. In such a situation the vendee is required to pay the vendor the full amount of the purchase price but the vendee is entitled to receive the condemnation award. (*Kuhn v. Freeman,* 15 Kan. 423; *Gammon v. Blaisdell,* 45 Kan. 221, 25 Pac. 580; and *Dreier v. Drainage District,* 117 Kan. 403, 232 Pac. 600.) Logically the same rule should be applied to an option contract for the purchase of land where the option has been exercised by the vendee. As pointed out heretofore where the option is exercised, a binding contract comes into existence which is mutually enforceable against both the vendor and the vendee.

There are no cases in Kansas exactly in point where an option to purchase real property has been exercised subsequent to a condemnation proceeding in which a portion of the land was taken for public use. There are, however, cases in other jurisdictions which permit the optionee to apply the condemnation award to the purchase price after the option has been exercised. In *Cullen & V. Co. v. Bender Co.,* 122 O. S. 82, 170 N. E. 633, a lessee of land was in possession under a lease for a term of years which contained a provision giving the lessee the option to purchase the land at any time during the term of the lease for a sum stated. Before the exercise of the option by the lessee a portion of the land was taken for public use by condemnation, for which the lessor received a condemnation award. It was held that the lessee on executing the option was entitled to credit for the amount of the condemnation award as against the stipulated purchase price. To the same effect are: *Phoenixville, V. F. & S. E. Ry. Co's Appeal,* 70 Pa. S. 391, 68 A. L. R. 1339; *Nicholson v. Weaver,* 194 F. 2d 804; *State v. New Jersey Zinc Co.,* 40 N. J. 560, 193 A. 2d 244; and *Cinmark Investment Company v. Reichard,* 54 Cal. Rptr. 810.

In the annotation in 68 A. L. R. 1338 there are cited cases from other jurisdictions which are distinguishable by the fact that at the time the action was brought the option to purchase had not been exercised. Likewise cases involving the destruction of build-

ings on the premises by fire before the option is exercised, such as *Caldwell v. Frazier*, 65 Kan. 24, 68 Pac. 1076, are not helpful here because of the peculiar circumstances involved.

As pointed out heretofore whether equity will grant specific performance of a contract rests in sound judicial discretion and depends on the equities in the particular case. We have concluded that in this case the appellant, Wilcox, should be granted specific performance of the contract by requiring appellee, Wyandotte World-Wide, to execute its warranty deed to Wilcox conveying the remainder of the tract consisting of 29.42 acres upon receipt from Wilcox of the sum of $43,575.04 which amount represents the total purchase price of $70,000.00 less the condemnation award and prorated taxes for 1969 which has been paid to Wyandotte World-Wide. The impact of real estate taxes for the years subsequent to 1969 should fall upon the appellant, Wilcox. The costs of the action are taxed to the appellee, Wyandotte World-Wide. In granting specific performance in this case we have considered the following facts and circumstances:

(1) The sale of Parcel B and the option to purchase Parcel C were a part of the same transaction and the consideration for the entire agreement between the parties.

(2) At the time the original agreement was entered into it was contemplated that the appellant, Wilcox, would perform work during the two-year option period to remove dirt and rock from Parcel B and to fill the draws, remove timber and change the creek channel on Parcel C with the end in mind of creating two buildable pieces of property.

(3) Wilcox performed the work with the full knowledge of Jack W. Bertoglio, president of Wyandotte World-Wide.

(4) The work performed by Wilcox enhanced the value of Parcel C including the land taken through condemnation by the Board of Trustees of the Junior College.

(5) The taking of the 6.85 acres through eminent domain by the Board of Trustees was not the fault of either party. As pointed out in *Kuhn v. Freeman*, supra, neither the vendor nor the vendee had any choice but to permit the taking of land by eminent domain and the parties must still perform their contract just as far as they can unless it is not possible to do so.

(6) A decree of specific performance as to the remaining 29.42 acres will effectively carry out the agreement of the parties. To deny specific performance would thwart the clear intention of the parties to the contract and unjustly enrich Wyandotte World-Wide at the expense of appellant, Wilcox.

(7) Payment of the sum of $70,000.00 to Wyandotte World-Wide less a credit for the condemnation award and prorated taxes already received

would give to appellee all of the benefits it was to receive under its agreement with Wilcox and thus its rights would be fully protected.

(8) By granting specific performance the difficult task of determining Wilcox' damages for his work and labor would be avoided.

Since the court has determined that specific performance should be granted in this case with an abatement of the purchase price to the extent of the condemnation award the remaining issues in the case are moot and need not be determined. In this case only the appellee, Wyandotte World-Wide moved for summary judgment. Although the appellant, Frank Wilcox, did not file a motion for summary judgment it should be noted that in the Objections to Summary Judgment Wilcox moved the court to determine the question of law presented in the defendant's motion for summary judgment.

The questions involved here have been determined in favor of the appellant. Under K. S. A. 60-256 a court may enter summary judgment in favor of the non-moving party on it's own motion where there remains no genuine issue as to any material fact and on the evidentiary record judgment must be for one of the parties as a matter of law. (*Green v. Kaesler-Allen Lumber Co.*, 197 Kan. 788, 420 P. 2d 1019.) It should also be noted that K. S. A. 60-2105 empowers this court to render such final judgment as it deems that justice requires or direct such judgment to be rendered by the court from which the appeal was taken. In view of our over-all disposition, nothing would be gained by remanding this case for a new trial. The judgment of the trial court is therefore reversed and the case is remanded with instructions to proceed in accordance with the views expressed in this opinion.

IT IS SO ORDERED.