No. 23,487.

C. F. HERMAN, *Appellant,* v. S. J. SAWYER, *Appellee.*

SYLLABUS BY THE COURT.

1. *Specific Performance—Conveyance of Land—Complete Performance Nonenforceable—Partial Performance Decreed.* The action was one by a vendee to compel specific performance of a contract to convey three quarter sections of land. The contract was not signed by the vendor's wife, and one quarter section was a homestead. *Held,* a decree should be entered for conveyance of the other two quarter sections, with proper abatements of price.

2. SAME—*Abstract to Show Merchantable Title.* The contract provided that the abstract of title should show "a perfect merchantable title." Under the facts, stated at length in the opinion, it is held the vendor was able to exhibit such a title in time to perform.

Appeal from Lane district court; ALBERT S. FOULKS, judge. Opinion filed October 7, 1922. Reversed.

*J. S. Simmons,* of Hutchinson, and *J. A. Simmons,* of Dighton, for the appellant.

*John W. Adams,* and *William J. Wertz,* both of Wichita, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to compel specific performance of a contract to convey three quarter sections of land. The contract was not signed by the defendant's wife, and one quarter section was a homestead. The court refused specific performance altogether, but awarded damages for refusal to carry out the contract so far as it related to land other than homestead. The plaintiff appeals.

The contract was signed on November 16, 1918. At that time a contract of the defendant to sell the land to Morris W. Fry was on record and unfulfilled. The defendant asserted the contract was procured by Fry's fraud, and could be avoided. In view of this situation, the following provisions relating to terms and conditions of sale were inserted in the contract between the plaintiff and the defendant:

"This agreement witnesseth that C. F. Herman . . . has this day bought of S. J. Sawyer, . . . on the following terms:

"$3,000, check for which amount is hereto attached, and to be delivered to S. J. Sawyer as soon as abstracts are furnished showing perfect merchantable title to said land. $2,000 mortgage on said land to be assumed by said C. F. Herman, as part payment for said premises, and the balance, $8,200, to be paid as soon as possession is delivered to said C. F. Herman, which is to be not later than March 1, 1919.

"It is agreed between the parties hereto that in case said Sawyer is wholly unable to furnish perfect title to said land, the attached check is to be returned to said Herman and this agreement canceled, and neither party to be liable for damages in any way."

On November 25, 1918, the defendant commenced suit to quiet title against the Fry contract, which suit Fry removed to the federal court. Afterward, and in February, 1919, Fry commenced an action in the federal court against the defendant for damages for breach of contract. The petition disclosed a trade of real estate in Kansas City, Mo., for the defendant's land, alleged that the Kansas City real estate had been taken from Fry because of the defendant's refusal to perform, alleged that Fry had thus been disabled from performance on his side, and prayed for damages against the defendant. The defendant's enthusiasm in the prosecution of his own suit against Fry then waned and, when the judgment under review was rendered, in October, 1920, the suit was still pending. Since one quarter section of the land was a homestead, and the contract was not signed by

the defendant's wife, the district court properly excluded that tract from further consideration. The court found the defendant was not able to make perfect title to the remainder of the land, and on that ground refused specific performance.

Exclusion of the homestead from consideration did not prevent specific performance of the contract to convey the remainder of the land. The contract was not "illegal" with respect to the remainder of the land, and the doctrine of entire consideration does not prevent equity from enforcing contracts as far as possible, to the end men may not treat them as scraps of paper, and to the end justice may be done. (*Crockett v. Gray,* 31 Kan. 346, 2 Pac. 809; *Gray v. Crockett,* 35 Kan. 66, 75, 10 Pac. 452; *Thompson v. Musick,* 85 Kan. 399, 116 Pac. 612.)

The provision of the contract governing conduct of the parties if the defendant should be "wholly unable" to perform, related specifically to the outstanding Fry contract, and contemplated, not merely diligence without success, but impossibility. While the defendant, led by his counsel, testified he had done everything he could to get the suit to quiet title disposed of, the patent fact was to the contrary. All he needed to do was to exhibit, on the equity side of the federal court, the pleading filed by Fry on the law side, and a decree would have been entered whenever applied for.

The perfect title referred to in the provision of the contract just discussed was the perfect merchantable title to be shown by the abstract of title. The quality of merchantableness was to be perfect, and was perfect before March 1, 1919, the date possession should have been given. Fry removed the suit to quiet title to the federal court, and necessarily knew its purpose and effect. He then commenced his own action at law, founded on breach of the contract sought to be canceled in the equity suit. He asserted he could not qualify himself to claim the land, and claimed damages. He thereby elected to waive, on the record of the federal court, all claim of interest in the land itself, quite as effectually as if he had disclaimed in the equity suit. A voluntary release or discharge of the contract would not have made the title any better. The only difference would have been that the release would have appeared on the records in the office of the register of deeds of Lane county, while the waiver appeared on the records in the office of the clerk of the United States district court for the district of Kansas. In either case a proper abstract would have disclosed the state of the title.

The judgment of the district court is reversed, and the cause is remanded with direction to award specific performance of the contract, excluding the homestead, making proper abatements of price, and to award such damages as the plaintiff may have suffered on account of the defendant's contumacy.