No. 32,187

H. A. Bohrer et al., *Appellants*, v. The Ramsey Petroleum Company et al., *Appellees*.

(44 P. 2d 239)

Opinion filed May 4, 1935.

*W. D. Jochems, J. Wirth Sargent, C. Edward Murray* and *Emmet A. Blaes*, all of Wichita, for the appellants.

*K. M. Geddes, Stanley Taylor*, both of El Dorado, *John J. Jones*, of Chanute, and *Ben Jones*, of Lyons, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: This is a controversy between the lessors and the lessee of an ordinary oil lease as to the amount of the royalty due thereunder to the lessors, where the lease is subsequently modified by a city ordinance limiting the number of oil wells to one in a block and requiring.the payment of certain royalties to all the other lot owners in the block. The plaintiffs claim the lessee should stand a share of the loss sustained by paying royalty to other lot owners in the block rather than the lessors to stand all of it.

The plaintiffs herein own an undivided six-sevenths interest in four lots in block 5 in the city of Chase, in Rice county, Kansas, a city of the third class. The owner of the remaining one-seventh interest, Dave Robinson, is not a party to this action, but did join with the plaintiffs in executing the lease in question, so it will be practical to consider the plaintiffs as representing the entire ownership of these four lots, although the holder of the one-seventh interest may not be bound by the ruling in this case. The four lots constitute approximately one-third of the total area or square footage of the block. The exact amount is stated in a stipulation filed by the parties during the trial of the case and also in the conclusions of law rendered by the trial court. We will in this opinion speak generally of the interest of the plaintiffs as being one-third the total footage of the block.

The lease on these four lots was executed by all the owners to the defendant company on September 13, 1932, giving it the right to drill thereon for oil within one year from its date and to continue as long as oil is produced from the lots by the lessee. The lessee promised therein to deliver to the credit of the lessors one-eighth of all oil produced and saved from the leased premises.

The lessee within the year allowed by the lease began the drilling of an oil well on one of these four lots. However, before it began to drill two city ordinances were passed by the mayor and council of the city of Chase, the second ordinance being an amendment of section six of the original ordinance extending the provisions of the ordinance to lot owners in the block who may have signed a community lease, as well as to those not having signed any lease whatever when the drilling of the well in their block had commenced. In this instance, all the other lot owners in this block had signed a community lease in which the defendant herein was the lessee, and it was executed prior to the enactment of the city ordinances.

Both parties concede the right of the mayor and city council in the exercise of their police power to limit the number of wells in a block to one, and to require the driller to deliver to the credit of the other lot owners in the block a share of the oil produced and saved from the only well being drilled on the block, the amended ordinance providing—

". . . that if parts of a block are included within the terms of a community lease, it shall be a condition of said permit that the permittee, its successors or assigns, shall deliver to the credit of such community lessors a

share of all the oil produced, saved or marketed from such well equal to one-eighth of the proportion of the whole production of such well that the square feet of ground covered by such lease in said block bears to the square feet contained in said block, exclusive of streets and alleys. . ."

Section six of the original ordinance provided only for those lot owners whose lots were not under lease, and it required the driller to give to them the proportion of one-eighth of the whole production from such well that the square feet of ground so owned and unleased in said block bears to the square feet contained in such block, exclusive of streets and alleys. In other words, section six of the original ordinance was providing for the owners of unleased lots in the block and giving them a proportionate share of a one-eighth royalty. An ordinance practically the same as this original one in the city of Chase was the one involved in the case familiarly known as the Oxford case, *Helmerich & Payne, Inc., v. Roxana Petroleum Corp.*, 136 Kan. 254, 14 P. 2d 663.

In the trial of the case at bar the court heard and passed upon some matters involved in the pleadings which we think will not materially affect the real question here to be determined, viz., a proper proportion of the oil for the lessors and the lessee, there being no controversy here now as to the share of the oil to go to the other lot owners. In the Oxford case the lessee was a party thereto but was not included in the appeal to this court, and its share of interest in the oil produced and saved was therefore not directly under consideration, and it was there held:

"The ordinance of the city of Oxford regulating the drilling and operation of oil wells within the city interpreted, and *held,* the provisions relating to distribution of oil produced superseded the terms of a lease between a lessor and his lessee." (Syl.)

In that case, with the lessee being dropped out of the appeal, the amount given the other lot owners reduced the amount the lessor would have received had it not been for the ordinance. Counsel for appellants puts this proposition in the form of a question, as follows:

". . . should this burden be borne solely by the lessors, or should it be borne by lessors and lessees proportionately as they are interested in the lease, *i. e.*, ⅞ by the lessees and ⅛ by the lessors?"

The trial court after making findings of fact in detail, but substantially as heretofore indicated in this opinion, then made the following conclusions of law based thereon:

"1. That the plaintiffs in this action are not entitled to the relief prayed for or to any relief in this action.

"2. That the defendants herein are entitled to the relief prayed for in their answer. . . .

"3. That the provisions of said lease relating to the distribution of oil produced was and is superseded by the terms of ordinances Nos. 116 and 120 of the city of Chase, Rice county, Kansas.

"4. That the defendants are entitled to and should distribute the proceeds from the oil produced from the well on said lot 15 in block 5 of the city of Chase, Kansas, according to the provisions of ordinances Nos. 116 and 120, and the plaintiffs and Dave Robinson and Ella Robinson, his wife, are entitled to receive .3,329,053 of the one-eighth of the oil produced and saved from the leased premises."

Our attention has not been directed to anything in the opinion in the Oxford case, accepted by both parties in this case as applicable thereto, which would tend to fasten the whole of this burden imposed by ordinance upon either lessor or lessee alone, but there are three expressions which might strengthen the contention of the appellants in favor of a division of the burden or loss sustained by giving shares to other lot owners. The first two relate to the free right of the lessor under the ordinance to contract for the amount of royalty to be paid with respect to his own land. And concerning this right it was said on page 256 of the opinion:

"This provision related to division between lessor and lessee of apportionable production, and not to source or quantity of oil to be divided."

And on page 257 it was said:

"The section was not intended to secure to a lessor on whose lots the single well provided for by the ordinance is drilled, the stipulated royalty, say one-eighth, computed upon oil drained by the well from lots the lessor did not own, and upon which the owner was prevented from drilling."

Another expression on page 257 is capable of application to the situation and facts in the case at bar. It is as follows:

"Both lessee and lessor were obliged to accept the situation resulting from enactment of the ordinance, and the lessee used the lease to obtain a permit, not merely for his own benefit, but also for the purpose of securing to the lessor whatever accrued to the lessor under the ordinance."

Section eleven of the original ordinance in the case at bar is as follows:

"That neither this ordinance nor any permit issued hereunder, shall be interpreted to grant any right or license to the permittee to enter upon or occupy in any respect in the drilling or production operations, any land except by the written consent of the owner, nor shall it limit or prevent the free right of any lot owner to contract for the amount of royalty to be paid with respect to his own land."

Appellee in support of the conclusion of the trial court urges that the ordinance nowhere authorizes a different proportionate share for the lessors than for the other lot owners, and that if permitted it would be discriminatory, unreasonable and an arbitrary exercise of police power. Appellee further urges that a different distribution with the lessors from that allowed the other lot owners in the block would be unfair and give such lessors a tremendous advantage over the other lot owners and would be giving them a share of the oil drawn from under the other lots of the block, whereas they should under the ordinance receive in conjunction with the other lot owners of the block only one-eighth of all the oil produced and saved from the entire block.

Appellee makes no allowance for the inconvenience and annoyance of having the work of drilling done on the lessors' lots and the continued annoyance of having the pumping done and the oil tanks located so near at hand. This is something under section eleven of the ordinance above quoted, which any lot owner can refuse, and only by written consent of the owner can the drilling be done on any lot.

The appellee insists that its seven-eighths should remain undisturbed by the ordinance, and yet by the ordinance the lessee is permitted to draw the oil that is under all the lots by drilling only one well. As this defendant has leases on all the other lots in the block it would have to drill offset wells on the other lots were it not for the ordinance.

Appellee illustrates the unfairness of the proposed division by taking a block containing 24 lots and drilling under a lease on one of the lots. In such a case each of the owners of the 24 lots would, under the ordinance and lease, receive $1/24$ of $1/8$ of the oil produced, whereas under the claim and plan of the appellants the owner of the lot on which the well was drilled would get $1/8$ of all the oil produced except the $23/24$ of $1/8$.

Appellants have illustrated the situation as claimed by them to be authorized by their written lease and their written consent to drill on appellants' lots by using decimals, which are very accurate, but more difficult to comprehend than if expressed in barrels of oil. We said at the beginning of this opinion we would consider the four lots owned by the appellants as covering approximately $1/3$ of the entire square footage of the block, and the balance of the block as being

approximately ⅔ of the block. Now suppose the well produces 800 barrels of oil a day. On the basis of ⅛ royalty 100 barrels would be considered as royalty, and 700 barrels as belonging to the driller or lessee. Then the owners of ⅔ of the block would receive credit for ⅔ of 100 barrels on the ⅛ royalty basis fixed by the ordinance, or about 66 barrels, leaving about 33 barrels of the ⅛ royalty. The appellee insists this is all that appellants should have, as it is ⅓ of ⅛ of the oil produced and saved.

Appellants claim the terms of their lease are modified only so far by the ordinance as it was necessary in the exercise of the police power of the city authorities as would serve the other lot owners to the share allotted them by the ordinance, and that the contract between them and the lessee should remain as it was except only for such necessary modification, which burden should be borne by both of the contracting parties instead of one of them only. This would leave 733⅓ barrels after giving the prescribed share to the other lot owners and that balance should be divided between the lessors and lessee on the basis of ⅛ to the lessors and ⅞ to the lessee, or about 92 barrels to the lessors and about 641 barrels to the lessee.

The ordinance fixed the royalty of all other lot owners in the block except the lessors and on a footage proportion of ⅛ of the oil produced and saved, but section 11 gave the contracting parties a free right to fix the amount of the royalty in their lease, and if it had been fixed in the lease at $1/_{16}$ of the oil produced, would the lessors here be entitled to the 33 barrels left out of the ⅛ royalty? Or take it on the other extreme, suppose the lease had called for a royalty of ¼, must the lessors be satisfied with the 33 barrels because that was the proportion given to the other lot owners?

Surely the provisions of the ordinance supersede the terms of the lease only so far as is necessary to give the ordinance full force and effect, and both parties should yield and accede to its terms far enough to accomplish the purpose and intention of the governmental authorities in the exercise of their police power, which was to prevent numerous oil wells in the same block and to provide for a reasonable share of the proceeds to go to all the other lot owners in the block. Aside from that, the contract as made by the parties should stand and be enforceable.

Under the heading of "Specific Performance" in 25 R. C. L., at page 247 *et seq.*, it is stated that courts of equity will require such

parts of a contract as are possible of performance to be enforced, even if it cannot all be performed. Our own court in such a case held in *Herman v. Sawyer,* 112 Kan. 6, 209 Pac. 663:

"The action was one by a vendee to compel specific performance of a contract to convey three quarter sections of land. The contract was not signed by the vendor's wife, and one quarter section was a homestead. *Held,* a decree should be entered for conveyance of the other two quarter sections, with proper abatements of price." (Syl. ¶ 1.)

This ruling was followed and approved in an action where damages were sought for failure to perform such a part of a contract that could be performed. (*Hughes v. Cressler,* 130 Kan. 533, 287 Pac. 271.)

The same principle was followed where the holder of a life and health insurance policy undertook to collect thereon upon the terms prescribed therein after the fraternal insurance company had by appropriate legislation subsequently amended the laws of the order, which materially modified and changed the rights of the policy holder. (*Dey v. Knights & Ladies of Security,* 113 Kan. 86, 213 Pac. 1066.)

We conclude that the enactment of the ordinances by the city authorities of the city of Chase was such an exercise of police power as to affect the terms of the lease previously executed and the rights and privileges of both contracting parties, but left the contract capable of being enforced as written, except as to the distribution of the oil to the owners of the other lots in the block, and all that remained after such distribution to other lot owners should be distributed according to the terms and provisions of the lease between plaintiffs and defendant.

The judgment of the trial court is reversed and the cause is remanded with instructions to direct distribution to the plaintiffs on the basis of one-eighth of all the oil that remains after making distribution to the other lot owners, as required by the ordinances, observing the fractional relation of the footage as expressed in the stipulation and the conclusions of law.