The judgment is affirmed.

---

ED L. PECKHAM, *Appellant*, V. M. J. LANE AND GERALDINE LANE *et al.*, *Appellees*.

No. 16,248.

SYLLABUS BY THE COURT.

1. CONTRACTS—*Specific Performance—Statute of Frauds*.  The statute of frauds does not prevent the maintenance of an action for the specific performance of a contract by which the defendant, being the owner of a tract of land, agreed to convey a portion of it of a certain size, to be selected by himself, to the plaintiff.

2. ——— *Same*.  Where in such an action the plaintiff asks for the conveyance of a specific tract, upon the ground that the defendant had selected it, although such selection may be ineffective because not made in writing, the petition is not on that account demurrable, for it may state facts sufficient to entitle the plaintiff to a conveyance of some portion of the larger tract, although he may not be entitled to the very part claimed.

3. ——— *Legality—Breach of Trust—Officer of a Corporation*.  A contract made by a managing officer of a railroad company

by which he is to receive a personal benefit in consideration of the location of a station at a particular place is void as against public policy.

4. ——— *Presumption—Trustee Acting for Himself or Beneficiary.* In passing upon a demurrer to a petition in an action by a managing officer of a railroad company for the specific performance of a contract by which the owner of a tract of land agreed to convey a part of it to him in consideration of the location of a station thereon, the court will not presume, in the absence of averments to that effect, that he made the contract and brought the suit in behalf of the company or that he had contracted with it for the right to hold the land himself.

Appeal from Barber district court; PRESTON B. GILLETT, judge. Opinion filed January 8, 1910. Affirmed.

*Dale & Bierer,* and *Seward I. Field,* for the appellant.

*Samuel Griffin, D. B. Welty,* and *Robert Stone,* for appellees M. J. Lane and Geraldine Lane.

The opinion of the court was delivered by

MASON, J.: Ed L. Peckham brought an action against M. J. Lane and Geraldine Lane seeking to require the conveyance of an eighty-acre tract of land, relying upon a written contract executed by them to him, the specific performance of which he asked. A demurrer to his petition was sustained and he appeals. The contract reads as follows:

"For and in consideration of the sum of one dollar, and other valuable consideration in hand paid us by Ed L. Peckham, of Blackwell, Okla., and the receipt whereof of said one dollar is hereby acknowledged, we do hereby bargain and sell, and hereafter convey unto the said Ed L. Peckham, the following-described real estate, situated in Barber county, state of Kansas, to wit:

"Eighty (80) acres out of the N. W. ¼ of sec. 29, T. 33, R. 11 W., being further described as being 80 acres out of the N. W. part of said section and in addition to the above one hundred additional by twenty-six hundred feet of right of way along the line of the Den-

ver, Kansas & Gulf railway on, or adjoining the aforesaid described real estate.

"The purpose of the above sale is to enable the said Ed L. Peckham to locate and build a railroad station and town site on the aforesaid described real estate, and we hereby agree, on demand of Ed L. Peckham, to execute and deliver to him a warranty deed for said eighty (80) acres of ground for said town site and also to execute on demand to the Denver, Kansas & Gulf Railway Company the extra right of way required for said station grounds; same to be a piece of land one hundred (100) feet wide by twenty-six hundred (2600) feet long, adjoining the town-site land above described, same to be selected by the said Ed L. Peckham.

"It is understood as a part of the consideration for this instrument that said Ed L. Peckham will deed to us when said town site is platted one hundred (100) lots in said town site, same to be average lots throughout the said town site and apportioned on the basis that said one hundred (100) lots bear to balance of lots owned by Ed L. Peckham in said town site.

"M. J. LANE.
"MRS. GERALDINE LANE."

The first contention of the defendants is that the contract is unenforceable under the statute of frauds because it does not show what particular eighty acres they undertook to convey out of the quarter section, they being the owners of all of it excepting a strip occupied by the track and right of way of the railway company. The plaintiff maintains that the reference to the length of an additional right of way adjoining the proposed town site determines its location—that to admit of the fulfillment of this requirement the eighty-acre tract must be taken from the west side of the quarter section. Such, however, does not appear to be the case, as other locations could meet that condition equally well or better. The contract can not be regarded as an agreement to convey any specific tract. But we think its fair interpretation is that the Lanes undertook to convey some tract out of the quarter section, to contain eighty acres and to adjoin the railroad right of way, and that the necessary implication is that they were themselves to

make the selection. The petition alleges that the plaintiff, with the consent of the defendants, platted the tract to which he makes claim into lots and blocks, forming a town site called "Gerlane," and that they selected from the plat the hundred lots to be reconveyed to them. Such selection, however, is not alleged to have been made in writing.

This view makes it necessary to determine whether under the statute of frauds an action will lie to compel the performance of a written contract for the sale of a tract of land to be selected out of a larger tract by the person sought to be charged, the selection not having been made in writing. The case of *Alabama Mineral Land Co. v. Jackson*, 121 Ala. 172, seems to answer this question in the negative. We think that case, however, proceeds upon a misconception. No reason is apparent why a person may not make a valid contract that he will sell to another one of several pieces of real estate of which he is the owner, to be selected by himself. When an agreement to that effect is written out and signed it is a complete contract, all of the terms of which are expressed in writing. The owner agrees that he will first make the selection and then make the conveyance. If he refuses to do either a court may compel him to do both. If he makes the selection and then refuses to convey the court may coerce the completion of the contract. Probably an oral selection would not be enough to convert the contract into one for the conveyance of the specific tract selected. If the buyer should claim, over the denial of the owner, that the latter had made a selection and upon that ground demand the conveyance of a particular tract, doubtless he could not support his contention except by written evidence, for to permit oral testimony to settle such a dispute would be against the purpose of the statute. But he can not avoid the obligation to which he has committed himself in writing merely by refusing to act at all. This seems so obvious that the citation of

authorities is hardly necessary. The principle, however, is illustrated with more or less fullness in the following cases: *Ellis v. Burden*, 1 Ala. 458, 466; *Carpenter and Another v. Lockhart*, 1 Ind. 434; *Washburn and another v. Fletcher*, 42 Wis. 152; *Fleishman v. Woods*, 135 Cal. 256.

In the present case the consent of the defendants to the filing of the plat, and their designation of the hundred lots therein, show an acquiescence in the treatment of the tract claimed by the plaintiff as that selected by them to be conveyed. Moreover, the petition specifically alleges the selection of this tract by the defendants. But as the selection is not alleged to have been in writing, doubtless the petition fails to show a right to demand the conveyance of the particular tract claimed, unless upon the principle of part performance; but, so far as the statute of frauds is concerned, it states facts sufficient to entitle the plaintiff to a deed to an eighty-acre tract somewhere in the quarter section, and is therefore not subject to demurrer.

The defendants also urge that the contract is too indefinite for enforcement, because it does not specify the size of the hundred lots to be deeded back by the plaintiff nor the manner of their selection. The allegations that the lots have been selected by the defendants show a practical construction of the contract in this regard.

A further argument is made that the contract is wanting in mutuality, but as the plaintiff alleges full performance on his part this defense is not open to the defendants. (*Plaster Co. v. Blue Rapids Township*, 77 Kan. 580; *Zelleken v. Lynch*, 80 Kan. 746.)

The final objection to the petition is that the real consideration for the agreement to convey the land was the location of a station at that point by Peckham, who was the president and general manager of the railway company, and therefore the contract contravened public policy because it contemplated a personal gain to an officer of the company on account of an act to be per-

formed by him on its behalf. So much of the petition as bears directly upon this matter reads as follows:

"Plaintiff alleges . . . that said contract was made for and in the interest of both the said Ed L. Peckham and the Denver, Kansas & Gulf Railway Company, in this, to wit, that the said railway company desired station grounds at the place named in said contract, and to build a railroad station and station facilities thereat, and through and by said contract the land was furnished upon which to construct said station and facilities, and the means furnished through the said Ed L. Peckham, who was in charge of the construction of said railroad and railroad station for the Denver, Kansas & Gulf Railway Company, and this plaintiff specifically alleges that in the making and entering into and execution of said contract there was no bribery or corruption of the said Peckham, and the same was not done to influence, and did not influence him, the said Ed L. Peckham, in any way improperly, corruptly or wrongfully, in violation of any of the rights of the Denver, Kansas & Gulf Railway Company or the public interested in the location and construction of said depot, but the same was done in good faith in the obtaining of the best location for said station, depot and station facilities, and to obtain the means to build the depot and construct the station facilities at said point in aid of the construction of the said Denver, Kansas & Gulf railway, and the consideration furnished by the said defendants Lanes was to enable the Denver, Kansas & Gulf Railway Company to construct said depot and said station and terminal facilities at the point named in said contract; that the location of the said station and station facilities is the best one in the vicinity of said land, and is nearly exactly half way between the towns of Kiowa and Medicine Lodge, in Barber county, Kansas, distant from each other twenty miles, and is a proper and practical place for the location of a station and depot facilities between said two points on said line of railway; and through, by, and in consideration of said contract and the carrying out thereof the said Ed L. Peckham has, through himself and others operating with him, furnished and caused to be furnished the money and means to locate, construct and build the said depot, railroad station and railroad facilities at said point, and the same has all been done

properly and legally and in good faith toward the said defendants Lanes, the said Denver, Kansas & Gulf Railway Company, and the public, in so far as it was interested therein. . . . This plaintiff further alleges that the consideration for the said contract . . . was $1 . . . and other valuable consideration, which was to enable the said Ed L. Peckham to locate and build a railroad station and town site on the said described real estate so agreed to be sold and thereafter conveyed unto the said Ed L. Peckham, as herein described, and in order that the same might be laid out as a town site and platted into lots, blocks, streets and alleys for town-site purposes, and sold as town lots."

It is clear from the contract itself and from these averments that the substantial consideration upon which the Lanes agreed to convey the eighty acres to Peckham was the location of a station upon their land; that the selection of a depot site was an act committed to Peckham in his capacity as an officer of the railway company; that on the face of the contract he sought to derive a personal benefit from an act performed by him in behalf of the company, in which he was bound to be guided only by regard for its welfare. These considerations render the contract void on grounds of public policy, upon a principle on which the authorities are practically unanimous.

"The stockholders of a corporation have the right to demand the disinterested action of its officers in the transaction of the corporate business, and all contracts which tend to place such officers under an inducement to disregard their duties to the corporation and to decide questions affecting the action of the corporation from a standpoint other than that of the best interests of the corporation are illegal." (15 A. & E. Encycl. of L. 947.)

"Another class of agreements which are deemed to be illegal and void because of their constituting or tending to constitute a fraud upon third persons are those whose object or tendency is to constitute a fraud or breach of trust or breach of duty on the part of a person who stands in a fiduciary or confidential relation, as . . . promoters, officers, and majority stockholders of corporations." (9 Cyc. 470.)

"The relation between the directors of a corporation and its stockholders is that of trustee and *cestui que trust*. The directors are persons selected to manage the business of the company for the benefit of the shareholders. It is an office of trust, which, if they undertake, it is their duty to perform fully and entirely. No director of a railroad company or any other corporation can use his official position to secure a personal advantage to himself. A contract made by a director under such circumstances is either void or inures to the benefit of the corporation of which he is an officer." (*Sargent v. K. M. Rld. Co.,* 48 Kan. 672, 688.)

The invalidity of a contract entered into in violation of this principle does not depend upon whether the trustee has intended an actual wrong or whether any injury has in fact resulted to the beneficiary: The purpose of the rule of law, like that of statutes of a similar nature, is "to spare weak human nature the strain of temptation and to discourage actual fraud by relieving the public from the task, always difficult and often impossible, of proving it." (*Sedgwick County v. The State,* 66 Kan. 634, 641.)

"Where the contract places such party under such influences the fact that the third person with respect to whom such party occupied the position of trust or confidence was not in fact injured by reason of the contract will not relieve it from its illegality, as such party will not be allowed to allege that he was not in fact corrupted." (15 A. & E. Encycl. of L. 945.)

The rule referred to is of the same character and is to be administered in the same way as that forbidding public officers to derive gain from the performance of their duties, of which it was said in *Woodman v. Innes,* 47 Kan. 26, 28, quoting from *Tool Company v. Norris,* 69 U. S. 45, 56:

"'All agreements for pecuniary considerations to control the business operations of the government, or the regular administration of justice, or the appointments to public offices, or the ordinary course of legislation, are void as against public policy, without reference to the question, whether improper means are contem-

plated or used in their execution. The law looks to the general tendency of such agreements, and it closes the door to temptation by refusing them recognition in any of the courts of the country.' ''

The cases bearing upon the application of the rule to a contract made by the officer of a railroad company by which he derives a personal advantage from the location of a station at a particular place are fully collected in *McGuffin v. Coyle and Guss,* 16 Okla. 648, and in a note thereto in 6 L. R. A., n. s., 524. In that case a note payable to the director of a railroad company on condition that the road should be built to a certain point by a certain time was held to be void. There was a strong dissent, but the disagreement between the justices was not upon any point having a bearing upon the soundness of the doctrine under discussion here. The minority maintained that the court should presume that the payee of the note was acting throughout in behalf of the company and was suing for its benefit, or that he had made a fair contract with the company upon some sufficient consideration, in virtue of which the proceeds of the note were to be retained by him. If the majority had granted these presumptions they would doubtless have reached the same conclusion, if the consideration of the note had been the location of a depot at a certain place, for they quoted with approval from an earlier opinion (*Enid Right of Way, etc., Co. v. Lile,* 15 Okla. 317) holding that a railroad company itself can not make a valid contract to receive a payment on that account—an opinion that appears to be opposed to the weight of authority. (*McCowen v. Pew,* 153 Cal. 735; *Atlanta & West Point R. Co. v. Camp,* 130 Ga. 1, and note in 15 L. R. A., n. s., 594.)

We need not determine whether the contract here involved, if it had been made by Peckham on behalf of the company, could be enforced by him for its benefit, nor whether he could enforce it on his own account if he could show that he had contracted with the company

32—81 KAN.

for the right to do so, by a fair agreement and upon a sufficient consideration, since neither of these conditions is shown by the petition. The contract on its face appears to be made for his personal benefit, and to be void for that reason. There is no occasion to presume that he was to take the title in trust for the company. A matter of that importance ought not to be left to presumption, since the pleader necessarily has knowledge of all the facts and can readily set them out so explicitly as to leave no room for doubt. The statement in the contract that its purpose was in part to enable Peckham to build a station may imply that he was to obtain funds to pay for the construction of a depot by a sale of town lots, but this falls far short of an allegation that he was acting for the company throughout or that he had contracted with it to receive the lots in consideration of his building the depot. The averment that through and in consideration of the contract and its performance Peckham did furnish the means to construct the depot and other facilities does not change the aspect of the case; it amounts only to saying that he voluntarily used some indefinite part of the profits of the contract for the benefit of the company. We interpret the petition as simply declaring upon a contract made by Peckham for his own benefit in consideration of an act to be performed as an officer of the company. So interpreted, we hold it to be demurrable. If this interpretation results from too narrow a view of the effect of its allegations, the plaintiff is not without a remedy. If facts exist which take the case out of the rule we have applied, there is still time in which a new action may be brought in which they may be pleaded, this judgment being an adjudication only upon the matters presented by the petition in this case as here construed. (24 A. & E. Encycl. of L. 800.)

The judgment is affirmed.