No. 37,144

F. C. Troutfetter, *Appellant*, v. E. B. Backman and Merrillat T. Backman, *Appellees.*

(193 P. 2d 201)

Opinion filed May 8, 1948.

*Jacob A. Dickinson,* of Topeka, argued the cause, and *Edward Rooney* and *David Prager,* both of Topeka, were with him on the briefs for the appellant.

*Hal E. Harlan,* of Manhattan, argued the cause, and *A. M. Johnston,* of Manhattan, was with him on the briefs for the appellees.

The opinion of the court was delivered by

Thiele, J.: This was an action in which plaintiff sought to have certain real estate owned by the defendants declared to be subject to a trust in his behalf and to require the defendants to convey the real estate to him. Judgment was rendered for the defendants and the plaintiff appeals.

In order to clarify the situation presented by the pleadings and evidence, the following statement is made. Prior to April 29, 1926, one Carl F. Baker owned a tract of land near Manhattan, Kan., which may be generally described as triangular in shape, the north side being about 400 feet long, the east side being about 481 feet long and the southwest line, being the east side of a public highway,

forming the hypotenuse. On April 29, 1926, Baker conveyed the north 140 feet of the tract to Charles Bachman and Grace Bachman and later and on April 4, 1927, Baker conveyed the south 341 feet to Charles Bachman, who was the sole grantee named. At a later date and on April 26, 1929, Charles Bachman and Grace Bachman conveyed to Dora Jones a portion of the entire tract which may be generally described as a parcel in the northwest corner, the north, line of which was about 270 feet east and west, the east line 240 feet north and south, the south line about 90 feet east and west, and the west line following in a northwesterly direction the east line of the highway. By later conveyances. not specifically disclosed, this parcel was conveyed to the defendants E. B. Backman and Merrillat T. Backman, or one of them. It is not involved in the present action. After the conveyance of April 26, 1929, was made, the title to a parcel 130 feet east and west and 140 feet north and south in the northeast corner of the entire tract remained in Charles Bachman and Grace Bachman, and on occasion is later referred to as "parcel A" and the title to the portion of the entire tract south of "parcel A" and south and east of the tract sold to Dora Jones remained in Charles Bachman and on occasion is later referred to as "parcel B." The lands in parcels A and B are contiguous, are involved in the present action and make up the real estate which is described in plaintiff's petition as one tract or parcel of real estate.

On February 4, 1947, Troutfetter commenced his action against the defendants E. B. Backman and Merrillat T. Backman in which he alleged that on September 26, 1946, Bachman then being the owner of certain described tracts of real estate (which includes parcels A and B above noted) agreed to sell the same to him, and that before execution and delivery of a deed from Bachman defendants learned of the sale but notwithstanding such knowledge induced Bachman to convey the real estate to defendants and to refuse to carry out his contract with plaintiff, and that on October 28, 1946, Charles Bachman and Grace Bachman, his wife, conveyed the real estate to defendants, that the deed was duly recorded and that the defendants were in possession by virtue of the deed; that the real estate in law and equity belonged to and was the property of plaintiff and by virtue of his contract with Charles Bachman for the purchase of the same and that a trust should be impressed upon the real estate for his benefit and the defendants should be required to convey the same to him, and his prayer was for such relief. The

petition makes no allegation that plaintiff will pay any amount to defendants nor is there any tender of performance on his part.

On February 24, 1947, the defendants answered, denying generally but admitting Charles Bachman owned the real estate described in the petition until he conveyed it to the defendants by warranty deed. They alleged they were owners of the land, had paid for it and were in possession and that plaintiff had no right, title, claim to or lien upon the land, and they prayed that plaintiff take nothing.

Upon the issues thus joined a trial was had on May 15, 1947. At its close the court requested counsel to file written briefs. On May 20, 1947, the defendants filed a motion for leave to reopen the case for the admission of specific additional evidence. This motion was allowed and on June 4, 1947, the evidence was received and the parties were given further time to file briefs. On August 13, 1947, the defendants filed another motion setting out that the petition alleged and the answer admitted that the lands described in the petition were the property of Charles Bachman and then setting forth the separate ownership of parcels A and B as previously stated, and asking that the case be opened in order that testimony to prove the facts might be admitted. On September 2, 1947, permission was given, the proof adduced, and the pleadings ordered corrected to conform. On November 7, 1947, the court found for the defendants and rendered judgment accordingly. Plaintiff's motion for a new trial was denied and he perfected his appeal to this court.

A summary of the evidence discloses the following: At the hearing on May 15, 1947, plaintiff testified that about September 1, 1946, he had DeYoung, a real-estate agent of Manhattan, write Charles Bachman as to what price Bachman would take for the real estate. DeYoung's letter is not in evidence. Later and about September 18, DeYoung read to plaintiff a letter dated September 9, he had from Bachman, that he would take "$3,500 net for the piece of property that I still own adjacent to my former home in Manhattan." Under date of September 18, plaintiff gave DeYoung his check payable to Bachman for $600, the check containing an endorsement: "Down payment on Tr. 6A & 6B—13-10-7 Riley County." Shortly after September 26 DeYoung showed him a letter from Bachman stating he was unable to find his abstract and to see Mr. Charlson, and that as soon as he received deed from Charlson he would sign it and return it to a named bank to be held until January 2, 1947, when it was to be delivered upon payment of $2,600 and that DeYoung

was to collect $400 more and deduct his commission of $100. Bachman's letters were received in evidence but the abstract does not contain any letters written by DeYoung. The plaintiff testified that later his check was returned to him from his bank; that about October 17 he went out to look at the property and on October 19 he told Mr. Backman, defendant, he had purchased the property but before starting construction he wanted to be sure of the boundary lines; that he was going to put in a drive-in eating place and possibly later a bowling alley and dance pavilion and a home and that Backman told him that he and the neighbors would object. On cross-examination he said he had never signed a contract nor received a deed from Bachman and that on October 19 when he saw Backman and told him he had bought the place he did not have a deed, that he had given the two checks and had the rest of the money in the bank waiting for a deed to be delivered.

Charlson testified he was an abstracter of titles and that in the latter part of September he had received a letter from Bachman which he identified, and which was received in evidence. The letter is undated and states Charlson probably knew that Bachman had sold the "small plot of ground adjacent to my former home in Manhattan" and according to DeYoung, Charlson was to prepare abstract and deed; that he was unable to find the abstract and after some references to it, "you will be able to prepare the abstract and the deed." In the letter Bachman further stated that when he received the deed he would sign it and send it to a named bank to be held in escrow until January 2, 1947, when it was to be delivered to the purchaser upon his paying the remaining sum due. This letter does not name any purchaser. Charlson further testified that thereafter he had a conversation with plaintiff, who gave him a check payable to the order of the witness for $400 bearing an endorsement "For payment on purchase of Bachman property" and that he cashed the check and deposited proceeds in an escrow account and thereafter he drew a check for $300 and sent it with a deed to Bachman in Michigan; that he prepared the deed from the Bachmans to Troutfetter; that the check had been returned to him but the deed had not been executed or returned. He also identified a copy of a deed from Charles W. Bachman and Grace Bachman, husband and wife, to E. B. Backman and Merrillat T. Backman, husband and wife, conveying the land described in the petition, and that it was

the land adjacent to the Backman property. He also testified he still had the amount of $400 in the escrow account.

Defendant E. B. Backman testified concerning his home and the real estate in question; that plaintiff told him he had bought that real estate and the uses he proposed to make of it, and that later witness bought the property and paid $3,600 for it.

As has been noted, the case was reopened and at the hearing on June 4, 1947, a telegram and letter from Charles Bachman to De-Young, both dated October 21, 1946, were received in evidence. Both stated Mrs. Bachman did not wish to sell and refused to sign the deed. The letter enclosed Bachman's check for $600 to Trout-fetter "who gave me his check for a like amount as a down payment on the transaction." At the same hearing it was stipulated that tracts 6A and 6B on plaintiff's check referred to the real estate described in plaintiff's petition. E. B. Backman testified that after plaintiff had told him he had bought the land he talked with Cliff Aubel, a neighbor, and Aubel called Bachman by telephone and found out that plaintiff had not bought the land; that under arrangements made by Aubel witness bought the property from Bachman and received the deed; that he had never received any letters from Bachman saying that plaintiff had not bought the property, and that he had made no inquiries of plaintiff, DeYoung, Charlson or any other person as to whether plaintiff had bought the property.

As has been pointed out, on September 2, 1947, the case was again reopened and proof as to the ownership of parcels A and B was made.

The trial court, in deciding the cause on November 7, 1947, made a statement which is printed in the abstract, in which it mentioned that actually there were two pieces of ground, which Troutfetter apparently regarded as one tract, but that there could be differences as to what real estate was involved, and the orginal contract was not definite enough the court could specifically enforce it, or lay hold on any particular piece of land and say that beyond any question this is the land that was meant, and that the contract lacked definiteness and mutuality. No findings of fact were requested or made. The journal entry of judgment states that the court, being fully advised in the premises, and after due consideration of the evidence, the arguments of counsel and the briefs submitted, finds for the defendants. Plaintiff's motion for a new trial

was denied and in due time he perfected his appeal to this court.

We shall refer to the parties as they appeared in the trial court. In his brief, plaintiff makes a statement of facts and ends it with a statement that judgment was rendered for the defendants by the trial court on the ground that the plaintiff's contract was lacking in definiteness and mutuality as to the description of the land involved, and, ignoring the fact the trial court, on evidence from which different conclusions might be reached, had found generally for the defendants, argues four general questions, viz: 1. That the contract was definite as to the lands covered, citing *Nauman v. Powers*, 147 Kan. 641, 78 P. 2d 27, and *Vining v. Ledgerwood*, 162 Kan. 380, 176 P. 2d 560, in which this court affirmed judgments of the trial court based upon evidence in those cases. 2. That the plaintiff, a contract vendee, was entitled to specific performance by the defendants who took title with notice of the plaintiff's purchase, citing *Leinbach v. Dyatt*, 112 Kan. 782, 212 Pac. 894, *Hoult v. Rich*, 161 Kan. 587, 170 P. 2d 834, and an annotation in 87 A. L. R. 1505, 1521. 3. That the refusal of Mrs. Bachman to join in a conveyance to plaintiff did not defeat his right to specific performance by the defendants, citing *Williams v. Wessels*, 94 Kan. 71, 145 Pac. 856, *McAdam v. Leak*, 111 Kan. 704, 208 Pac. 569, and *Allen v. Elwell*, 129 Kan. 296, 282 Pac. 706. 4. That specific performance was not prevented by the fact that Mrs. Grace Bachman owned an undivided interest in a portion of the land, citing *Williams v. Wessels*, and *Allen v. Elwell*, supra, and *Herman v. Sawyer*, 112 Kan. 6, 209 Pac. 663. Even if it be conceded that plaintiff is correct with respect to each contention as urged by him on the premises assumed by him, in view of the judgment of the trial court, we may not ignore other matters inherent in the judgment.

It is essential to the remedy of specific performance that there be a valid contract to be performed, and since there can be no valid contract unless there is mutuality of obligation, the contract must disclose that. Mutuality must exist from the inception of the contract, without reference to the subsequent willingness of the party to perform. (*Electric Management & Engineering Corp. v. United P. & L. Corp.*, 19 F. 2d 311; *Nelson v. Schippel*, 143 Kan. 546, 56 P. 2d 469, 58 C. J. 878.) Although we have a number of decisions holding that where a plaintiff seeking specific performance of a contract alleged full performance on his part, the defendant may not rely upon want of mutuality as a defense (see, *e. g., Burnell v.*

*Bradbury,* 67 Kan. 762, 74 Pac. 279, and *Peckham v. Lane,* 81 Kan. 489, 106 Pac. 464, 25 L. R. A., n. s., 967, 19 Ann. Cas. 369), the instant case does not fall within that rule for plaintiff had not fully performed. When the present action was commenced and when the trial was had, the contract was in an executory and not executed stage insofar as either Troutfetter or Bachman was concerned. Plaintiff's testimony developed not only that he had not paid the full consideration—it also developed that he had not signed any contract of any kind, nor had anyone for him, that bound him to pay Bachman $3,600 or any other amount for all or any part of the real estate. Had the situation been reversed and had Bachman tendered plaintiff a deed and demanded specific performance by payment of the price, the action could not have been maintained for Troutfetter had never agreed to buy the land nor to pay therefor. Cases may be found holding that a vendor seeking payment of the purchase price may maintain an action for specific performance, but it will be found in those cases that the vendee has contracted to buy and to pay. (See, *e. g., Lumber Co. v. Town Co.,* 51 Kan. 394, 32 Pac. 1100.) It may be argued that a promise to pay could be implied or inferred from all the circumstances surrounding the contract, but the trial court, which had that duty, found for the defendants.

The contentions made by the plaintiff also ignore the fact that he failed to show to the satisfaction of the trial court that Mrs. Merrillat T. Backman, one of the defendants now holding title and possession and who it is prayed shall convey to plaintiff, had any notice or knowledge of plaintiff's dealings with Bachman.

In *Shoop v. Burnside,* 78 Kan. 871, 98 Pac. 202, may be found an extended statement of facts. Summarized it may be said that Burnside accepted an owner's offer to sell land and sent on a deed, requested its execution and stated upon its being sent to a bank he would pay the agreed price. The owner then wrote she had decided not to sell. Burnside brought suit and the trial court ordered specific performance. This court reversed, saying that specific performance is not a matter of right but of equity; that a contract to sell or purchase may be regularly made and yet specific performance would not follow as a matter of course, citing cases in support. The above case was cited approvingly in *Haston v. Citizens State Bank,* 132 Kan. 767, 297 Pac. 1061, where it was held that the granting of specific performance rests in the sound judicial discretion of the

court, and it will not enforce a contract where under the facts it would be unreasonable and inequitable to do so.

Before the judgment of the trial court can be reversed it must appear that it is wrong. If we isolate each proposition stated by the plaintiff appellant, we think it may not be said the trial court erred in holding the contract was indefinite as to the particular lands. Under a contract of sale of real estate the vendee may demand performance of the contract by a grantee of the vendor who acquired title with notice. It follows that if the grantee did not have notice the vendee could get no relief from the grantee. The refusal of a wife to join in a deed to convey lands contracted to be sold by her husband, or that the contract included lands belonging to her, would not prevent a limited enforcement of the contract if other facts warranted. However, included under the issues was whether a valid contract had been made and implicit in the judgment in favor of the defendants is the question whether mutuality of obligation existed under the contract. The judgment resolves that question in favor of the defendants. Finally, where it appears that a plaintiff, who is the vendee in a contract for the purchase of real estate, seeks to impress a trust on the lands which the vendor has conveyed to two purchasers, at least one of whom had no notice of the purchase and sale contract, and to compel a conveyance to himself, such plaintiff is not entitled to specific performance as a matter of right and the court, in its discretion, under the circumstances, may refuse such relief as unreasonable and inequitable.

The judgment of the trial court is affirmed.

HOCH and BURCH, JJ., concur in the result.