No. 38,326

In the Matter of the Estate of Herbert La Mar Davis, Deceased, (IDA GEORGIA DAVIS, ELLENOR ATKINSON and MARY JEAN STEWARD, *Appellees* and *Cross-Appellants*, OTTO R. SOUDERS, Administrator c.t.a., *Appellee*, v. BETTY DAVIS, *Appellant* and *Cross-Appellee*.)

(237 P. 2d 396)

Opinion filed November 10, 1951.

*Joe T. Rogers*, of Wichita, argued the cause, and *E. L. Wheeler* and *Roy L. Rogers*, both of Wichita, were with him on the briefs for the appellant and cross-appellee.

*Martin S. Hall*, of Anthony, argued the cause, and *Max D. Hall*, of Anthony, was with him on the briefs for the appellees and cross-appellants.

The opinion of the court was delivered by

PARKER, J.: This is a case wherein Betty Davis, second wife and widow of Herbert L. Davis, deceased, appeals from a judgment of the district court of Harper county, Kansas, affirming orders of the probate court of that county and allowing the claim of Ida Georgia Davis, the first wife of the decedent, acquiesced in by her daughters, Ellenor Atkinson and Mary Jean Steward, for specific performance of a postnuptial contract between the decedent and his first wife along with a supplemental contract between the same parties and an accounting for rents from real estate. Involved also is a cross-appeal from an order of the district court disallowing a claim made by Ida Georgia Davis under the provisions of G. S. 1949, 59-1504, for an allowance of attorneys fees incurred by her in the institution and prosecution of the proceeding.

In a preliminary way it can be said Ida Georgia Davis instituted the proceeding in probate court by the filing of a petition wherein she sought the relief heretofore indicated but that due to the fact her two daughters by answer admitted all the allegations of her petition and adopted its averments and asked for the relief therein claimed the contest in both the probate and district courts was between the petitioner and the daughters on the one hand and the respondent, Betty Davis, on the other. For that reason, in the interest of brevity, except when otherwise specifically indicated, the term "claimants" as hereinafter used in this opinion has reference to the mother and the two daughters and the term "respondent" to Betty Davis.

At least two contentions advanced by the parties are of such character we deem it advisable to discuss and dispose of them contrary to the usual practice in advance of a factual statement.

One specification of error relied on by the respondent and argued at length is that the district court erred in admitting the transcript of testimony taken in the probate court of Harper county. We note from the record that when the case was called for trial in the district court all of the parties, including the respondent, stipulated in open court that the cause should be tried upon the transcript of evidence taken in probate court together with all the pleadings, exhibits, and depositions therein introduced without the introduction of further evidence. Under such circumstances there is no merit to this claim of error. Having stipulated as above indicated the respondent cannot now be heard to say that the trial court in

deciding the case erred in doing the very thing she had agreed that it might do and the mere fact, as will presently be disclosed, additional evidence was introduced at the trial did not preclude it from giving consideration to the transcript in accord with the stipulation of the parties.

Early in their briefs the claimants make the statement that by stipulation the cause was tried in the district court upon a transcript from probate court without further evidence and then suggest, citing decisions to support their position, it is the duty of this court to review the record and decide what the facts establish, substantially in the same manner as it would if this were an original action. There are cases where the rule on which claimants rely has application but this is not one of them. The record discloses that, regardless of the stipulation to which we have referred, parol evidence was offered and received in the district court on many, if not all, of the issues raised by the pleadings. In that situation all this court is required to do on appellate review is to determine whether the trial court's findings as to the facts are supported by substantial competent evidence. If so its findings will not be disturbed.

The rule applicable under the foregoing conditions and circumstances is stated in *In re Estate of Rinker,* 158 Kan. 406, 147 P. 2d 740, where it is held:

"In an action to defeat the probate of a will on the ground it had been revoked in the manner provided for in G. S. 1943 Supp. 59-611 material parol testimony as well as written evidence was received. *Held,* the trial court is the trier of the facts and the supreme court will not try *de novo* the issues raised by the pleadings.

"When in an action of the character described in the preceding paragraph of the syllabus there is substantial, competent evidence to support the findings of the trial court, this court will not review the evidence for the purpose of determining its weight and precise preponderance and will treat such findings as conclusive on appeal even though the record discloses some evidence on which contrary findings might have been based." (Syl. ¶¶ 1 and 2.)

For other decisions to the same effect see *In re Estate of Johannes,* 170 Kan. 407, 409, 227 P. 2d 148; *Akins v. Illinois Bankers Life Assurance Co.,* 166 Kan. 648, 655, 203 P. 2d 180; *Bolin v. Johnson County Nat'l Bank,* 160 Kan. 61, 65, 159 P. 2d 477.

In announcing its decision the court below handed down a memorandum opinion containing extensive findings of fact and a statement to the effect that if all material matters of fact and law had not been sufficiently determined therein it would make such addi-

tional findings and conclusions as might be warranted upon request. We are not advised whether further findings were requested but assume so inasmuch as the journal entry of judgment, which it is to be noted includes the memorandum findings by reference, discloses findings in addition to those already made. From these findings, which our examination of the record discloses are supported by substantial competent evidence and other testimony about which there is no dispute, we are able to glean the facts required for a proper understanding of the issues and our decision of this appeal and shall now summarize them as briefly as the state of a long and confusing record permits.

Ida Georgia Davis and Herbert L. Davis were married in 1915 and immediately took up their residence in Waco, Texas. Two daughters were born to this union, Ellenor three or four years after the marriage and Mary Jean some six years later. From 1915 to 1934 Mr. Davis was engaged in the retail shoe business. He was not a success financially and during the latter part of that interim his wife spent practically all of a $10,000 inheritance she had received from her parents in paying off a mortgage on their home and other obligations for which her husband was liable. During the same period of time Mr. Davis and his sister, Nellie Thomas, inherited two Harper county, Kansas, farms from their parents in equal shares, one consisting of 320 acres and the other of 120 acres. In about 1930 the 320 acres was mortgaged by Davis and his sister for $10,500, the former receiving the entire proceeds of the loan which he put into and lost in his failing shoe business.

From 1934 until 1944 Mr. Davis was away from home a good deal of the time working at divers jobs. During 1935 or 1936 he became acquainted with the respondent. Apparently, as a result of this acquaintance, he lost interest in his family and home and in 1944 told Mrs. Davis that he desired a divorce. She objected. Thereupon, in the presence of their two daughters, he advised his wife that if she would accede to his wishes he would give her the home, all insurance, and his interest in the two Kansas farms. The wife did not consent to this offer. However, Mr. Davis persisted in respect to his demands for a divorce and finally, on May 6, 1947, induced her to join with him in the execution of a contract, providing the agreement was to become effective only upon the entry of a decree of divorce by a competent court, whereby they settled and disposed of their property rights.

We are concerned only in this case with real estate located in Kansas. As to it this contract reads:

"It is further agreed between the parties that the said Herbert L. Davis owned in his separate right, by inheritance, certain properties in the state of Kansas, among which is the North one-half of Section Seven, Township Thirty-Five, Range Nine, Harper County, Kansas, of which he owns an undivided one-half interest. As to this, the said Herbert L. Davis agrees that in the event of the sale of this property by himself, that he will pay one-half of the net proceeds he receives from such sale to Ida Georgia Davis, and that in the event of his death before any sale occurs, all of his interest in said property will be beqeathed, share and share alike, to his two daughters."

Shortly after execution of the first contract the wife who, for good and sufficient reasons, was dissatisfied with its terms insisted such contract be changed for her benefit and refused to proceed with the divorce until that was done. Thereupon, Mr. Davis went to a Mr. Maxwell, the mutual attorney of both parties, and after explaining the situation to him requested a new agreement that would cause his wife to proceed with the divorce action. Thereafter a second agreement supplementing the original contract, was drawn by Mr. Maxwell and executed by both parties on July 2, 1947. This supplemental or second contract, insofar as it pertains to the real estate involved and omitting provisions not having any reference thereto, reads:

"It is herein agreed by and between Herbert L. Davis and Ida Georgia Davis that their agreement entered into on May 6, 1947 be and the same is hereby amended in the following particulars:

"That the provision wherein Herbert L. Davis agrees that in the event of his death, his interest in the Kansas lands will be bequeathed share and share alike to his two daughters shall read as follows:

"That in the event of the death of Herbert L. Davis before any sale of any of the lands occur that his interest in said land will pass to Ida Georgia Davis for her use and that she shall have the net income therefrom so long as the said Ida Georgia Davis shall live or until she shall remarry, whichever event first occurs; that upon her death or remarriage, the remainder in said lands shall pass in fee simple to the bodily heirs of Herbert L. Davis according to the laws of descent and distribution of the State of Texas.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Except as herein specifically amended, the said original contract shall remain in full force and effect."

Following execution of the supplemental agreement and on July 11, 1947, Ida Georgia Davis was granted a decree of divorce from Herbert L. Davis in the district court of McLennan county, Texas, after procuring approval of the two contracts above mentioned,

the decree of that court stating that the property of the parties had been disposed of by agreement.

Herbert L. Davis married the respondent, Betty Davis, sixteen days after the rendition of the Texas divorce and they lived together thereafter as husband and wife, residents of Texas until he died on January 7, 1949. No children were born to this union. About three months after the date of this last marriage he executed a will whereby he devised Ida Georgia Davis a life estate in the 320 acres of land in Kansas and his two daughters the fee title to that real estate. By the terms of such instrument all other property of which he died seized, including, of course, the 120 acre Kansas tract, was devised to Betty Davis. This is the will which was brought to Kansas and admitted to probate in Harper county.

Before it could reach a decision as to the over-all force and effect to be given the two contracts the district court was confronted with the question whether they were to be construed as covering one or both of the involved tracts of Kansas real estate. It concluded, and we think properly so, that there was some ambiguity in the terms of those instruments which should be determined by resort to the intention of the parties. Based on substantial competent evidence introduced on that point it found the executing parties intended the second contract should apply to all the Kansas real estate and construed the contracts accordingly. Under the circumstances, there can be so little doubt about the correctness of the trial court's decision on this phase of the case, we are not even inclined to labor arguments advanced by the respondent to the contrary.

Having disposed of the foregoing question the district court found that upon their approval by the Texas court as a part of the divorce decree the two contracts became binding upon the signatories thereto and that the portion of the second and final contract, heretofore quoted, was to be construed as vesting the equitable title to the Kansas lands in the claimants subject only to rights of sale as therein provided. It then held that, since the decedent, Herbert L. Davis, had died without having exercised that power of sale, the claimants were entitled to specific performance of the contracts.

Contentions advanced by the respondent as grounds for reversal of the judgment can be segregated into two groups and should be so considered. The first group relates to the validity of the contracts as between the parties thereto while the second, assuming the validity of those instruments, raises the question specific per-

formance of their terms is not warranted because of rights acquired by her as the wife of Herbert L. Davis subsequent to their execution.

With respect to the first group it is contended: (1) The contracts were too indefinite for enforcement. Argument on this point is devoted to the proposition that it would have been impossible to ascertain what the net profits from the sale of the real estate would have been if it had been sold under terms of the first contract. We doubt there would be merit to this contention if the land had been sold but we do not need to pass upon that question. Its short and simple answer is that none of the land was ever sold, hence the clear and definite provisions of the second contract became applicable; (2) that consent of the daughters to the second agreement was necessary in order to give it validity. Assuming, without deciding, this claim might be entitled to serious consideration in a contest between Ida Georgia Davis and her two daughters it lacks merit under the facts and circumstances here involved. The daughters have recognized the second contract as binding and are asking for its enforcement and the respondent, who had no interest in the contracts at the time of their execution, is in no position to challenge the validity of the contracts made for their benefit; (3) that the contracts violate the rule against perpetuities. We do not agree. Broadly stated the rule against perpetuities is that no future interest in property can lawfully be created which does not necessarily vest within twenty-one years after some life or lives presently in being, excluding from such computation of years the incipient life of infants *in ventre sa mere* (*Lasnier v. Martin*, 102 Kan. 551, 171 Pac. 645). Resort to the provisions of the second agreement heretofore quoted makes it crystal clear that every provision of that contract was to become effective within "lives presently in being."

We find nothing in the record or in the foregoing contentions to justify a conclusion the contracts were invalid. Therefore, the remedy of specific performance, which we pause to note is not limited to any particular class of contracts, is available to claimants and the trial court properly proceeded to determine whether it should be applied.

There can be no doubt about what is required to warrant and sustain a decree in specific performance. The rule is well stated in 49 Am. Jur., Specific Performance, 96, § 79, where the following statement appears:

". . . In general, it may be said that whenever one party to a valid legal contract who has performed or tendered the performance of all conditions

precedent on his part can show that the contract is a fair and equitable one free from any taint of fraud, overreaching, etc., on his part, and that his remedy at law for its breach is not adequate, and it appears that the terms of the contract meet the requisite requirements of certainty and that its obligations are mutually binding, equity will, regardless of the subject matter of the contract, decree its specific performance, *provided* the plaintiff has acted with reasonable promptness in seeking such relief and *the enforcement of the contract will not be inequitable upon the defendant or difficult or impossible for the court to carry out. . . .*" (Emphasis supplied.)

We are convinced there can be little question that unless it be for matters emphasized in the preceding quotation everything necessary to sustain the trial court's judgment is clearly established by the record. This conclusion requires consideration of the second group of contentions advanced by the respondent as grounds for reversal of its judgment. In giving them consideration it will be conceded at the outset that under our decisions (*Anderson v. Anderson*, 75 Kan. 117, 88 Pac. 743; *Troutfetter v. Backman*, 165 Kan. 185, 193 P. 2d 201) specific performance is not a matter of right but of equity, and the granting of such relief rests in the sound judicial discretion of the court which will not specifically enforce a contract where under the facts it would be unreasonable and inequitable or for some other reason improper to do so.

Under this second group the respondent claims: (1) That under our statute (G. S. 1949, 59-503), since she had never elected to take under the will of the decedent, she became the owner of an undivided one-half interest in all Kansas real estate left by him on the date of his death and (2) that she had no knowledge of the contracts when she married the decedent and hence, in any event, they should not be enforced against her in equity. The answer to these contentions is to be found in the case of *Dillon v. Gray*, 87 Kan. 129, 123 Pac. 878, which has been followed repeatedly and is cited and approved by this court as late as *Eastwood v. Eastwood*, 167 Kan. 471, 478, 207 P. 2d 393, where it is held:

"Marriage will not constitute the wife a purchaser of an interest in lands owned and held by the husband. Upon his death the wife acquires no interest by will or under the statute in any property to which he held the legal title but which in equity belonged to others. Under the facts stated in the preceding paragraph, therefore, the plaintiffs were not required to show that the second wife, before her marriage, had notice of their claim under the contract." (Syl. ¶ 2.)

Finally respondent insists that under the facts disclosed by the record it was unjust and inequitable to decree specific performance of the contracts. In order to sustain this contention we would

have to find the court abused its sound judicial discretion. The facts of this case do not warrant any such conclusion. Indeed we are constrained to add, particularly since it is conceded that after his second marriage Herbert L. Davis made no payments upon the mortgage which is still a lien upon the land in question, the record discloses no conditions and circumstances which should cause a court of equity to hesitate to compel performance of the contracts.

That the accounting phase of the judgment is involved in this appeal is purely incidental. The respondent makes no contention it was erroneous if, as we have held, the trial court did not err in decreeing specific performance. Therefore, this portion of the judgment must be and is upheld.

The claimants, as has been heretofore indicated, have appealed from the order of the trial court disallowing a claim made by Ida Georgia Davis under the provisions of G. S. 1949, 59-1504, for an allowance of attorneys fees incurred by the latter in the institution and prosecution of the case on which this appeal is founded.

The section of the statute on which claimants rely reads:

". . . Whenever any person named in a will or codicil defends it, or prosecutes any proceedings in good faith and with just cause, for the purpose of having it admitted to probate, whether successful or not, or if any person successfully opposes the probate of any will or codicil, he shall be allowed out of the estate his necessary expenses and disbursements in such proceedings, together with such compensation for his services and those of his attorneys as shall be just and proper." (G. S. 1949, 59-1504.)

We find nothing in the section of the statute from which we have just quoted which can be construed as contemplating that a claimant is entitled to recover attorneys fees or other expenses incurred in the prosecution of a suit in probate court for specific performance of contracts such as are here involved. It follows the trial court's action in disallowing the claim based on that premise was proper and we so hold.

The judgment is affirmed.