No. 39,643

Peter Komarek Estate, EDREE CAROLD HANEY and NATHALIE DELILAH MILLS, *Appellees,* v. SALLIE KOMAREK, *Appellant.*

(282 P. 2d 446)

Opinion filed April 9, 1955.

*George R. Gould,* of Dodge City, argued the cause, and *George Gould, Jr.,* of Dodge City, was with him on the briefs for the appellant.

*E. C. Minner,* of Dodge City, argued the cause, and *Harry A. Waite,* of Dodge City, was with him on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This appeal was taken from a judgment or decree of the district court affirming the probate court's order decreeing specific performance of a family settlement contract between a father and his two daughters by a first wife, now deceased, over and against an antenuptial contract between the father and his wife of a subsequent marriage.

Peter Komarek (hereinafter referred to as Peter) and Vivian Komarek (hereinafter referred to as Vivian) were husband and wife and there were two daughters of this marriage, Edree Carold

Komarek Haney (hereinafter referred to as Edree) and Nathalie Delilah Komarek Mills (hereinafter referred to as Nathalie). Vivian died testate on February 2, 1946, leaving an estate of $68,506.28. Edree was appointed executrix of Vivian's estate. Vivian's will provided that one half of her property, real, personal or mixed, was to go to Peter in fee simple, absolute, forever, and further, that Peter was to receive a life estate in the remaining one half with the remainder going to Edree and Nathalie, their heirs and assigns in fee simple, absolute, share and share alike, forever. On February 28, 1946, Peter, Edree, and Nathalie entered into and executed a family settlement whereby (1) all the property in Vivian's estate vested in Peter forthwith; (2) Edree was to receive one fourth of oil and gas royalty derived from Vivian's land, (3) Nathalie likewise was to receive one fourth of oil and gas royalty derived from Vivian's land, and (4) Peter should execute a will giving all property, real, personal or mixed, owned by him at his death to Edree and Nathalie, share and share alike, provided that in the event either Edree or Nathalie predeceased Peter, her share should pass to her children and, if there were no children, then Peter could dispose of her share as he saw fit. This agreement was acknowledged before the probate judge.

On July 20, 1947, which was approximately seventeen and one half months after Vivian's death, Peter and Sallie Keck (hereinafter referred to as Sallie) entered into an antenuptial contract in anticipation of marriage. Peter and Sallie were each sixty-eight years of age at that time; Peter had approximately $90,000 worth of property, which consisted of gas royalties—$15,000, bonds—$50,000, residence property—$20,000, and farms—$5,000; Sallie had no property. The contract provided (1) that Peter was to provide for and maintain Sally commensurate with his means during his life, and he was to make a will bequeathing her $10,000 if she survived him and provided that a divorce decree had not been granted either party, in which event the $10,000 provision would be null and void; and (2) that Sallie released, relinquished and waived all rights or claims she might acquire and have against Peter or his estate by reason of being his wife, and she expressly agreed to sign a consent to his will to be drawn after the marriage in conformity with the $10,000 covenant. The contract was acknowledged before a notary public on July 28, 1947.

Peter gave Sallie a $6,500 residence in her home town of Clinton,

Missouri, shortly before their marriage. Peter and Sallie were married in September, 1947.

Subsequent to Vivian's death, Peter made gifts to his daughters and Sallie as follows:

Edree received $11,000 in four checks and she received a cash distribution from Vivian's estate in the sum of $3,100. She occupied an efficiency apartment in Peter and Sallie's home where she paid only her share of the utilities.

Nathalie received the same amount of cash as Edree, which made a total of $28,200 to the two daughters.

The parties stipulated in the record that Sallie received $27,650. Some of the items appeared in the record as follows: Joint bank account—$2,000; U. S. bonds left at Peter's death in Sallie's name—$3,050; oil royalty conveyed about one year before Peter's death to Sallie—$3,000; a loan to Sallie's son and a friend of the son, which was forgiven after $1,000 was paid thereon; medical bill for Sallie's son-in-law—$1,000; the residence in Missouri—$6,500; and a one half interest in a mortgage for $12,500 (the remaining half interest was appraised at $3,000 in Peter's estate).

Peter made his will on September 28, 1951, and therein provided that if either of his daughters had to care for him in his old age, she should be paid for such care. The will further provided the executor should sell all personal property within one year and the real property within two years, all debts were to be paid, Sallie was to be paid $10,000, and the balance was to be paid one half to Edree and one half to Nathalie.

Sallie consented to the will and agreed to accept $10,000 instead of claiming a widow's statutory allowance. In her consent Sallie stated she was doing this in compliance with their antenuptial contract and that *she had not helped accumulate* any of the property of Peter. The consent was signed on the same day the will was executed.

Peter had dealt with the property left by Vivian as he saw fit with no objections on the part of Edree or Nathalie. Peter died January 26, 1953. His will was made on September 28, 1951. He left a gross estate of $59,801.32, which was $8,605.96 less than Vivian's gross estate of $68,506.28.

Edree and Nathalie filed a petition for allowance of demand on December 4, 1953, which was after the time had expired for Sallie to have been able to elect not to take under Peter's will. The peti-

tion of the daughters set out the family settlement agreement and further stated: The probate court finally settled Vivian's estate according to this agreement rather than under Vivian's will; no appeal had been taken therefrom; Peter took full possession and exercised complete control and dominion over all property and assets of Vivian's estate; Edree and Nathalie claimed Peter, by giving Sallie a bequest of $10,000, violated the family settlement contract and the judgment of the probate court in Vivian's estate probate proceedings; this entitled them to judgment of specific performance declaring them to be fee simple owners, share and share alike, in all of Peter's estate.

Sallie filed her objection to allowance of the daughters' claim because it would be inequitable now to enforce the family settlement thereby revoking Sallie's $10,000 bequest and further, if the family settlement was strictly enforced, then Peter was fee owner of all the property and he alienated the $10,000 at that time, and it was enforceable against his estate at his death.

The probate court in its journal entry found the family settlement was fairly entered into, was supported by adequate consideration, was just and equitable, that Vivian's estate had been settled in accordance therewith instead of by her will, there had been full performance by the daughters, all benefits had been accepted and acted upon by Peter, and it was therefore in full force and effect at Peter's death, which bound him to bequeath to the daughters all property owned by him at his death including the assets of Vivian's estate. The probate court also found that Peter undertook to and did bequeath $10,000 to Sallie in keeping with the antenuptial contract, that Peter had given Sallie property in excess of $27,000, and further found that nothing had passed to Sallie at the time of the antenuptial contract, and when Peter attempted to will any of his property, he was without power to do so by reason of the family settlement. Equity required and Edree and Nathalie were adjudged to be the owners of all the assets of Peter's estate.

Sallie duly appealed from this order to the district court of Ford county, which court made the same findings as the probate court and in particular that Peter had agreed in the family settlement, in consideration of Edree and Nathalie conveying all of Vivian's property in fee simple to him, to bequeath to his daughters, share and share alike, all property owned by him at his death. The settlement was fairly entered into, was just and equitable, and was supported

by adequate consideration. Vivian's estate was finally distributed in accordance therewith instead of according to Vivian's will. This judgment was not only not appealed from, but it was fully performed by the daughters, and all fruits therefrom were accepted and acted upon by Peter. In addition, the district court found that Peter had violated the terms of the family settlement in failing to leave his will in accordance therewith when he bequeathed $10,000 to Sallie. The daughters, having no adequate remedy at law, were entitled to specific performance of the contract and a decree declaring them to be owners of all the property belonging to Peter and his estate at the time of his death. The district court so ordered and decreed.

There was no appeal from the order overruling the motion for a new trial. Therefore, we are not confronted with errors which may have been committed during the trial by the district court.

Two questions are presented by the specifications of error: (1) Did the trial court abuse its discretion by arbitrarily ruling that the family settlement agreement was enforceable regardless of all the equities in the case and regardless of the antenuptial agreement and the will of Peter; and (2) did the trial court err in failing to consider the contract between Peter and Sallie as a transfer of the equitable title to $10,000 in Sallie upon her fulfillment of the terms of said agreement?

Appellees raise the question of sufficiency of the specifications of error and cite cases which hold a mere statement that the court erred in rendering judgment in plaintiff's favor against defendant does not present specific questions for review. This would be true as stated, but the specifications of error under consideration here state what the trial court ruled and also the basis for the ruling. We are of the opinion the appeal is properly before us.

At the outset there is no claim by Sallie either in the court below or here of any homestead. Her only claim is that she was entitled to $10,000 under Peter's will or she was entitled to $10,000 *in praesenti* or at the time of the making of the antenuptial agreement between her and Peter.

Sallie vehemently complains of the trial court's ruling that the family settlement between Peter and his two daughters superseded and abrogated the antenuptial agreement between her and Peter, which ruling was inequitable and ignored all the equities in her favor. Let us look at what Peter did for Sallie: Before marriage

they made the antenuptial agreement whereby Sallie admitted she was marrying a man worth $90,000, more or less, and she had no assets; she also admitted she had done nothing to help accumulate his wealth; she knew he had two daughters by his former marriage; Sallie was properly supported by Peter during their married life; she received many valuable and lasting gifts of both real and personal property; the marriage took place late in their lives and, at the time of Peter's death, they were each approximately seventy-two or seventy-three years of age. Can it be said from an equitable standpoint that Sallie was not properly provided for? We are of the opinion that from the facts set out in the record she was, in equity and good conscience, well provided for by Peter. (*In re Estate of Schippel*, 169 Kan. 151, 165, 218 P. 2d 192.)

As far back as *Anderson v. Anderson*, 75 Kan. 117, 88 Pac. 743, the rule of law was propounded that,

"When a definite contract to leave property by will has been clearly and certainly established, and there has been performance on the part of the promisee, equity will grant relief, provided the case is free from objection on account of inadequacy of consideration and there are no circumstances or conditions which render the claim inequitable," (p. 123.)

and this was followed in *Dillon v. Gray*, 87 Kan. 129, 132, 123 Pac. 878. The Dillon case goes on to say substantially that notice of a pre-existing contract to a wife of a subsequent marriage is immaterial and is not required in order to bind her. At her husband's death the wife acquired no interest in property held by him which in equity belonged to others. Her marriage did not make her a purchaser. Thus, in the case before us, Sallie's marriage did not make her a purchaser.

Some later cases adhering to this rule are *Lewis v. Lewis*, 104 Kan. 269, 178 Pac. 421; *Vanek v. Vanek*, 105 Kan. 388, 184 Pac. 731; *In re Estate of Davis*, 171 Kan. 605, 237 P. 2d 396. In the Lewis case, where there were mutual wills made by a husband and wife, the wife died, and there was a subsequent will of the husband, the court said:

"Where a property owner about to be married makes disposition of that property in fraud of the rights of the intended spouse, the courts will set aside that disposition. [Citations] But a disposition of property made long prior to contemplation of a marriage . . . cannot be in fraud of the rights of a second spouse." (p. 273.)

In the Vanek case our court said the widow's right to a homestead depended upon the title of her husband at the time of the marriage;

her husband, at the time of his marriage, held only the legal title to the land; the equitable title was in the promisees. (p. 393.)

In the Davis case, where a very clear-cut statement of the law governing cases of this kind was set out, the court reiterated what was said in *Dillon v. Gray,* supra:

" 'Marriage will not constitute the wife a purchaser of an interest in lands owned and held by the husband. Upon his death the wife acquires no interest by will or under the statute in any property to which he held the legal title but which in equity belonged to others. Under the facts stated in the preceding paragraph, therefore, the plaintiffs were not required to show that the second wife, before her marriage, had notice of their claim under the contract.' " (p. 612.)

In 69 A. L. R. 14, we find the following statement:

". . . at the time the contract was entered into, the promisor was married and was old and feeble and the promisees were the children of himself and wife, the fact that, sometime after the execution of the contract, the promisor's wife dies and he remarries, no equities are raised in favor of the second wife which will prevail over the equities of the promisees, arising out of the faithful performance of the contract, at a considerable sacrifice." (p. 71.)

In 57 Am. Jur., Wills, § 206, p. 180, it is also said:

"The subsequent marriage of the promisor does not necessarily justify the refusal of specific performance of his contract to devise property in consideration of services to be rendered; the equities may be in favor of the promisees who have faithfully performed the services required by the contract and opposed to the spouse by the subsequent marriage, especially where the promisor was old and feeble at the time he made the contract and the promisees were his children."

In regard to appellant's second specification of error, we need not dwell thereupon for the reason that if Sallie could acquire no rights in Peter's property by marriage, she could not acquire any rights by the antenuptial contract because of the rule as laid down in the cases cited.

The judgment and decree of the trial court is affirmed.